ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
COLBY B. SPRINGER (SBN 214868)
cspringer@carrferrell.com
CHRISTINE S. WATSON (SBN 218006)
cwatson@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:   (650) 812-3444

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>PSYSTAR CORPORATION,<br><br>        Defendant. | CASE NO. CV-08-03251-WHA<br><br>**ANSWER AND AFFIRMATIVE DEFENSES OF PSYSTAR CORPORATION**<br><br>**COUNTERCLAIMS FOR VIOLATIONS OF THE SHERMAN, CLAYTON, AND CARTWRIGHT ACTS, AND STATE AND COMMON UNFAIR COMPETITION LAW**<br><br>**JURY TRIAL REQUESTED** |
| PSYSTAR CORPORATION,<br><br>        Counterclaimant,<br><br>   v.<br><br>APPLE INC., a California corporation,<br><br>        Counterdefendant. | |

     Through its undersigned counsel, Defendant and Counterclaimant Psystar Corporation (hereinafter PSYSTAR) responds to the July 3, 2008 *Complaint for Copyright Infringement etc.* (hereinafter "Complaint") of Plaintiff and Counterdefendant Apple Inc. (hereinafter PLAINTIFF or APPLE) as follows:

Dockets.Justia.com

# BACKGROUND ALLEGATIONS

1.     PSYSTAR admits that PLAINTIFF is a California corporation with its headquarters and principal place of business at 1 Infinite Loop, Cupertino, California.  PSYSTAR admits that PLAINTIFF sells hardware, software, and services including the Macintosh computer, the iPod music player, and the iPhone.  PSYSTAR admits that the PLAINTIFF was founded in 1976 and that PLAINTIFF has been referred to as "one of the most innovative companies in the world." PSYSTAR lacks information or knowledge as to the number of persons employed by the PLAINTIFF; PSYSTAR likewise lacks information or knowledge as to the number of stores operated by the PLAINTIFF and on that basis denies those allegations; PSYSTAR admits that PLAINTIFF sells a number of products online.  PSYSTAR admits that in 2008, *Fortune Magazine* named the PLAINTIFF "America's Most Admired Company."

2.     PSYSTAR admits that PLAINTIFF launched the Macintosh line of computers in 1984 but otherwise denies the allegation that PLAINTIFF is "[a] pioneer of the personal computer revolution."  On information and belief, PSYSTAR admits that the Macintosh (or "Mac") utilized a mouse, computer icons, and graphical user interface but lacks information or knowledge as to whether said components and functionality were novel and on that basis denies the remainder of the allegation.  PSYSTAR admits that the Macintosh line of computers has included those particular models identified in the third sentence of paragraph 2 of the Complaint but denies the un-cited reference that said line of computers is "perennially praised" and on that basis denies the remainder of the allegation.  PSYSTAR lacks information or knowledge as to the number of Macintosh computers sold by the PLAINTIFF since 2001 and on that basis denies the allegation.

3.     PSYSTAR admits the allegation that Macintosh computers are considered "famous" and that Macintosh computers are generally considered to be reliable and to enjoy ease-of-use as it pertains to the operating system.  PSYSTAR, on information and belief, denies the allegation that development teams of the PLAINTIFF "have seamlessly integrated the hardware and software features of the Macintosh computer[]" and that the Macintosh "is simpler to service, update and

1  maintain." PSYSTAR is without information or knowledge as to *Consumer Reports'* ranking of
2  technical support for or by the PLAINTIFF and on that basis denies the allegation.
3  4.      PSYSTAR admits that version 10.0 of the Mac OS X was released in 2001. PSYSTAR
4  admits the allegations of the second sentence of paragraph 4 of the Complaint. PSYSTAR is
5  without information or knowledge as to whether the unidentified reviewers referenced by the
6  PLAINTIFF in the third and fourth sentences of the paragraph 4 of the Complaint actually made
7  such statements and on that basis denies the remaining allegations as set forth in paragraph four of
8  the Complaint.
9  5.      PSYSTAR admits that the "color, transparency and animation" and "overall arrangement"
10  of the Mac OS X interface are "unique and creative" with respect to their operative functionality.
11  PSYSTAR admits that the combined Apple mark as purportedly found in the Finder toolbar is
12  "famous" for its functionality and that the Finder toolbar is combined with "a distinctive three-
13  dimensional applications bar" thereby offering additional functionality for the benefit of the user of
14  the Mac OS X. PSYSTAR denies that the "combination of elements" in the Mac OS X interface is
15  "distinctive," "nonfunctional" and "well known to consumers"; PSYSTAR is without information
16  or knowledge as to whether the aforementioned elements are "associated with the PLAINTIFF and
17  Mac OS X Leopard" and on that basis denies the remainder of the allegation. PSYSTAR admits
18  that the PLAINTIFF refers to the aforementioned combinations as the PLAINTIFF's "Trade Dress"
19  but denies that any legal protections offered by any associated theory are available and/or valid.
20  6.      PSYSTAR admits that the Mac OS X has been the subject of media discussion and that the
21  Mac OS X—if the PLAINTIFF means to refer to the same as "[t]he product"—has received
22  "significant acclaim." PSYSTAR is without information or knowledge as to whether the sale of
23  Mac computers has "surged," whether the growth of any such sales is "at a faster pace than the
24  personal computer market in general," and whether any such sales are related to the Mac OS X and
25  on that basis denies the assertion.
26  7.      PSYSTAR admits that the PLAINTIFF manufacturers and sells a product known as the
27  Xserve rack-mount server. PSYSTAR admits that the Xserve uses an iteration of one or more
28

1   components referenced as the Mac OS X Leopard Server.  PSYSTAR admits that the Mac OS X

2   Leopard Server has been the subject of media discussion.

3   8.      PSYSTAR admits that the PLAINTIFF alleges ownership in certain registered trademarks

4   as identified in the first sentence of paragraph 8 of the Complaint and that certain marks and brands

5   of the PLAINTIFF have been referenced by others as being "one of the most famous brands in the

6   world."  PSYSTAR admits that the PLAINTIFF promotes, offers, and sells computers, goods, and

7   services in interstate commerce but is without information or knowledge as to the time and effort

8   corresponding to such promotions, offers, and sales and/or the specific trademarks used with such

9   promotions, offers, and sales and on that basis denies the allegation.  PSYSTAR is without

10  information or knowledge as to the promotional expenditures of the PLAINTIFF and whether such

11  expenditures are related to the trademarks identified in the third sentence of paragraph 8 of the

12  Complaint and on that basis denies the allegations.  PSYSTAR denies the allegation that the

13  PLAINTIFF's brand, unidentified marks, and purportedly distinctive trade dress (if any) are

14  "synonymous" with anything and on that basis denies the allegation.  PSYSTAR admits that

15  *BusinessWeek Magazine* has identified the PLAINTIFF as the "World's Most Innovative

16  Company."  PSYSTAR is without information or knowledge as to whether the unidentified

17  independent research organizations referenced by the PLAINTIFF in the final sentence of

18  paragraph 8 of the Complaint actually made such determinations and on that basis denies the

19  allegation.

20  9.      PSYSTAR is without information or knowledge as to what the consuming public

21  nationwide associates with or understands any marks or trade dress of the PLAINTIFF to identify

22  and on that basis denies the allegation.  PSYSTAR is without information or knowledge as to the

23  quality of any goods or services of the PLAINTIFF and any good will established with respect to

24  the same and on that basis denies the allegations.

25  10.     PSYSTAR is without information or knowledge as to the exclusivity and frequency of use

26  of any mark of the PLAINTIFF and on that basis denies the allegation; PSYSTAR expressly denies

27  that it is infringing said marks.  PSYSTAR admits that certain marks of the PLAINTIFF may be

28  famous but deny that any alleged trade dress enjoys such fame, in part because the alleged trade

dress of the PLAINTIFF is functional and on that basis denies the allegation; PSYSTAR expressly denies that it is infringing the same. PSYSTAR is without information or knowledge as to what the PLAINTIFF considers its "most important assets" and on that basis denies the allegations; PSYSTAR likes denies the assertion that any trade dress is distinctive and again notes the functionality of the same.

11.     PSYSTAR admits that it is a corporation organized and doing business under the laws of the State of Florida with its principal place of business at 10475 NW 28th Street, Doral, Florida.

12.     PSYSTAR admits that for a period of several hours on one day that PSYSTAR colloquially referred to certain computers by the name of 'OpenMac' but denies that it currently sells any computer referred to by that name; PSYSTAR denies that it sells any computer under any name that runs a modified, unauthorized version of the Leopard operating system. PSYSTAR admits currently selling a computer referred to as the 'Open Computer' and that said computer may include the Leopard operating system; PSYSTAR denies that any such computer runs a modified, unauthorized version of the Leopard operating system. PSYSTAR admits that it offers the Open Computer for sale online and that PSYSTAR ships said computer throughout the United States including into the Northern District of California. PSYSTAR admits that it has made statements concerning the number of computers sold. PSYSTAR denies the allegations in the final sentence of paragraph 12 of the Complaint, specifically: that PSYSTAR makes copies of the Leopard software; that PSYSTAR offers downloads of 'updates' to the Leopard software from the website www.psystar.com; that PSYSTAR copies any "updates" generated by the PLAINTIFF; and/or that PSYSTAR generates unauthorized, modified versions of software updates from the PLAINTIFF.

13.     PSYSTAR admits that it sells a rack-mounted server referred to as the OpenServ. PSYSTAR otherwise denies each and every allegation of paragraph 13 of the Complaint.

14.     PSYSTAR is without information or knowledge as to the allegations of paragraph 14 of the Complaint and on that basis denies each and every allegation therein.

15.     PSYSTAR admits that the PLAINTIFF seeks an injunction against the alleged misappropriation and alleged infringement of the PLAINTIFF's allegedly proprietary software and alleged intellectual property; PSYSTAR denies that it has misappropriated any such proprietary

software or intellectual property. PSYSTAR denies that its actions have harmed the consuming public, sells a poor product, and/or has advertised and promoted any such product in a manner that falsely and unfairly implied an affiliation with the PLAINTIFF. PSYSTAR denies that its action have and/or continue to cause harm to the PLAINTIFF; PSYSTAR likewise denies that its actions constitute a misuse of PLAINTIFF's intellectual property. PSYSTAR admits that the PLAINTIFF seeks an award of actual damages (while concurrently denying that any exist), treble damages (while concurrently denying that any such relief is appropriate,), and attorneys' fees and costs (while concurrently denying that any such relief is appropriate); PSYSTAR denies that it has engaged in any action that is unfair, unlawful, exploitive, or that otherwise causes consumer confusion and injury nor that any such action has ever existed.

## **JURISDICTION AND VENUE**

16.     PSYSTAR admits that the Northern District of California has jurisdiction of the present action in that the PLAINTIFF has brought the action pursuant to, *inter alia,* the copyright laws of the United States. PSYSTAR denies that it has caused the PLAINTIFF any harm.

17.     PSYSTAR admits that venue is proper in the Northern District of California in that PSYSTAR has done business in this judicial district. PSYSTAR otherwise denies the allegations of paragraph 17 including that PSYSTAR has committed infringement of copyright and/or trademark infringement, breached a contract, engaged in unfair competition, and/or continues to commit such acts in this or any district. PSYSTAR admits that the present action is an Intellectual Property Action and is therefore exempt from the intra-District venue provisions of Local Rule 3-2(c).

## **GENERAL ALLEGATIONS**

18.     PSYSTAR admits that the PLAINTIFF claims to license the use of the Mac OS for use only on Apple-labeled hardware although PSYSTAR is without information or knowledge as to what this otherwise vague and ambiguous terminology (*i.e.*, Apple-labeled hardware) refers.  PSYSTAR is without information or knowledge as to what is meant by an "original version of the Mac OS" and on that basis denies the allegations of the second sentence of paragraph 18 of the Complaint and believes that the Mac OS may be purchased online and/or from any number of resellers such as Amazon, AsenaShop, FadFusion, and SoftwareMedia.com.  PSYSTAR admits that the PLAINTIFF states that upgrades to the Mac OS may be licensed separately and, further, that the PLAINTIFF states its license prohibits the use of the Mac OS or upgrades on non-Apple hardware.

19.     PSYSTAR admits that a license agreement is attached as Exhibits 1 and 2 to the Complaint but is without information or knowledge with respect to whether those agreements are provided with each version of the Mac OS X or Max OS X Server and on that basis denies the allegations of the first sentence of paragraph 19 of the Complaint.  PSYSTAR admits that the quoted language matches that language as provided in the exhibit attached to the Complaint claiming to be the Mac OS X license and, further, that said quoted language also corresponds to that language in the exhibit purporting to be the Max OS X Leopard Server License Agreement; PSYSTAR otherwise denies all remaining allegations of paragraph 19 of the Complaint including whether or not said terms are valid and/or enforceable.

20.     PSYSTAR admits the allegations of paragraph 20.

21.     PSYSTAR admits the allegations of paragraph 21 but only to the extent that PSYSTAR has never engaged in any discussion concerning the allegations of paragraph 21 with the PLAINTIFF; PSYSTAR similarly notes that the PLAINTIFF has never denied PSYSTAR the authorization to install, use, or sell the Mac OS software on any non-Apple-labeled hardware until the filing of the present action.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

**FIRST CLAIM FOR RELIEF**

**(Copyright Infringement)**

22.     PSYSTAR repeats and incorporates by reference its admission and denials as set forth in paragraphs 1-21 of the present Answer.

23.     PSYSTAR denies that Max OS, Mac OS X, Mac OS X version 10.5, and Mac OS X Server all constitute "an original work of authorship" "constituting copyrightable subject matter" as those terms are defined by the United States copyright laws and on that basis denies the allegations; PSYSTAR is without information or knowledge as to who contributed to the purported works of authorship identified in paragraph 23 of the Complaint and on that basis denies the allegations of paragraph 23.

24.     PSYSTAR admits that the PLAINTIFF claims to be the owner of the copyright registrations identified in paragraph 24 of the Complaint.  PSYSTAR is without information or knowledge as to whether registrations should have been granted as to the aforementioned works and on that basis denies the remaining allegations in paragraph 24.  PSYSTAR denies the allegation that PSYSTAR has infringed any valid copyright held by the PLAINTIFF.

25.     PSYSTAR denies the allegations of paragraph 25 including the allegation that PSYSTAR has in anyway infringed any of the PLAINTIFF's exclusive rights under the Copyright Act.

26.     PSYSTAR denies the allegations of paragraph 26 of the Complaint.

27.     PSYSTAR denies the allegations of paragraph 27 of the Complaint.

28.     PSYSTAR denies the allegations of paragraph 28 of the Complaint.

29.     PSYSTAR denies the allegations of paragraph 29 of the Complaint.

30.     PSYSTAR denies the allegations of paragraph 30 of the Complaint.

31.     PSYSTAR denies the allegations of paragraph 31 of the Complaint.

**SECOND CLAIM FOR RELIEF**

**(Contributory and Induced Copyright Infringement)**

32. PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-31 of the present Answer.

33. PSYSTAR denies the allegations of paragraph 33 of the Complaint.

34. PSYSTAR denies the allegations of paragraph 34 of the Complaint.

35. PSYSTAR denies the allegations of paragraph 35 of the Complaint.

36. PSYSTAR denies the allegations of paragraph 36 of the Complaint.

37. PSYSTAR denies the allegations of paragraph 37 of the Complaint.

38. PSYSTAR denies the allegations of paragraph 38 of the Complaint.

39. PSYSTAR denies the allegations of paragraph 39 of the Complaint.

40. PSYSTAR denies the allegations of paragraph 40 of the Complaint.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract)**

41. PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-40 of the present Answer.

42. PSYSTAR denies the allegations of paragraph 42 of the Complaint in that the software disk is not sealed or shrink-wrapped.

43. PSYSTAR denies the allegations of paragraph 43 of the Complaint.

44. PSYSTAR denies the allegations of paragraph 44 of the Complaint.

45. PSYSTAR denies the allegations of paragraph 45 of the Complaint.

**FOURTH CLAIM FOR RELIEF**

**(Inducing Breach of Contract)**

46.     PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-45 of the present Answer.

47.     PSYSTAR admits that it is aware of the existence of the License Agreement governing the use of the Max OS X software and certain conditions and terms thereof but lacks information or knowledge as to what particular terms and conditions are referred to by the PLAINTIFF and for that reason denies the allegation.

48.     PSYSTAR denies that it has advised, encouraged, and assisted others to breach the License Agreement; PSYSTAR has not advised consumers to acquire Mac OS X software and install, use, and run it on non-Apple-Labeled computers.  PSYSTAR denies that it has unlawfully induced breach of the License Agreement by others.

49.     PSYSTAR denies the allegations of paragraph 49 of the Complaint.


**FIFTH CLAIM FOR RELIEF**

**(Trademark Infringement)**

50.     PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-49 of the present Answer.

51.     PSYSTAR admits that registered marks exist as attached to the Complaint as Exhibit 3 but is without information or knowledge as to what goods and service those marks pertain and on that basis denies the remaining allegations of paragraph 51.

52.     PSYSTAR admits that the PLAINTIFF has never expressly consented to the use of any trademark of the PLAINTIFF but alleges that PSYSTAR has never engaged in any discussion concerning the allegations of paragraph 52 with the PLAINTIFF; PSYSTAR further alleges that the PLAINTIFF has never denied PSYSTAR the authorization to use any mark of the PLAINTIFF.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1   PSYSTAR denies that any valid mark has been infringed and on that basis denies the remaining
2   allegations of paragraph 52.

3   53.      PSYSTAR admits that it is aware of the PLAINTIFF and its business but denies that
4   PSYSTAR has infringed any valid mark of the PLAINTIFF.

5   54.      PSYSTAR denies the allegation that it has engaged in an unauthorized use of any trademark
6   of the PLAINTIFF; PSYSTAR further denies that any action of PSYSTAR has caused deception or
7   confusion or mistake amongst consumers as to the origin, sponsorship, approval, affiliation,
8   connection, or association between the PLAINTIFF and PSYSTAR and on that basis denies the
9   remaining allegations of paragraph 54.

10  55.      PSYSTAR denies the allegations of paragraph 55 of the Complaint.

11  56.      PSYSTAR denies the allegations of paragraph 56 of the Complaint.

12  57.      PSYSTAR denies the allegations of paragraph 57 of the Complaint.

13  58.      PSYSTAR denies the allegations of paragraph 58 of the Complaint.

14  59.      PSYSTAR denies the allegations of paragraph 59 of the Complaint.

15

16                          **SIXTH CLAIM FOR RELIEF**

17                            **(Trademark Infringement)**

18

19  60.      PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in
20  paragraphs 1-59 of the present Answer.

21  61.      PSYSTAR is without information or knowledge as to the existence of the unidentified
22  common law trademark rights of the PLAINTIFF and on that basis denies the allegations of
23  paragraph 61 of the Complaint.

24  62.      PSYSTAR is without information or knowledge as to the nature of existence of the
25  unidentified "various marks or . . . [purportedly] distinctive trade dress" referenced in paragraph
26  sixty-two of the Complaint and on that basis denies those allegations.

27

28

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

63.     PSYSTAR denies the allegations of paragraph 63 because PSYSTAR has never sought to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, association or approval of goods or services of PSYSTAR or to imply an association with the PLAINTIFF.

64.     PSYSTAR denies the allegations of paragraph 64 of the Complaint.

65.     PSYSTAR denies the allegations of paragraph 65 of the Complaint.

66.     PSYSTAR denies the allegations of paragraph 66 of the Complaint.

67.     PSYSTAR denies the allegations of paragraph 67 of the Complaint.

68.     PSYSTAR denies the allegations of paragraph 68 of the Complaint.

69.     PSYSTAR denies the allegations of paragraph 69 of the Complaint.

70.     PSYSTAR denies the allegations of paragraph 70 of the Complaint.

71.     PSYSTAR denies the allegations of paragraph 71 of the Complaint.

72.     PSYSTAR denies the allegations of paragraph 72 of the Complaint.

## SEVENTH CLAIM FOR RELIEF

### (Trade Dress Infringement)

73.     PSYSTAR repeats and incorporates by reference its admission and denials as set forth in paragraphs 1-72 of the present Answer.

74.     PSYSTAR is without information and belief as to whether the PLAINTIFF is the owner of the alleged Trade Dress and on that basis denies the allegations of paragraph 74.

75.     PSYSTAR is without information and belief as to what is well-known among consumers and what has become exclusively associated with the PLAINTIFF and the Leopard version of the Mac OS X and on that basis denies the allegations of paragraph 75.

76.     PSYSTAR denies that PLAINTIFF's alleged Trade Dress is distinctive with respect to the Max OS X Leopard operating system and whether the same distinguishes PLAINTIFF's goods and services and on that basis denies the allegations of paragraph 76.

77.     PSYSTAR denies that PLAINTIFF's purported Trade Dress is distinctive and on that basis denies the allegations of paragraph 77.

1  78.  PSYSTAR denies that PLAINTIFF's purported Trade Dress is non-functional.

2  79.  PSYSTAR denies that it has engaged in an unauthorized use of PLAINTIFF's purported

3  Trade Dress and that any activity of PSYSTAR is likely to cause confusion, mistake, or deception

4  with respect to the source of goods and services or as to the affiliation, connection, association,

5  sponsorship or approval of such goods and services and on that basis denies the allegations of

6  paragraph 79.

7  80.  PSYSTAR denies that it has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

8  81.  PSYSTAR denies the allegations of paragraph 81 of the Complaint.

9  82.  PSYSTAR denies the allegations of paragraph 82 of the Complaint.

10  83.  PSYSTAR denies the allegations of paragraph 83 of the Complaint.

11  84.  PSYSTAR denies the allegations of paragraph 84 of the Complaint.

12  85.  PSYSTAR denies the allegations of paragraph 85 of the Complaint.

13

14  **EIGHTH CLAIM FOR RELIEF**

15  **(Trademark Dilution)**

16

17  86.  PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

18  paragraphs 1-85 of the present Answer.

19  87.  PSYSTAR denies the allegations of paragraph 87 of the Complaint.

20  88.  PSYSTAR denies the allegations of paragraph 88 of the Complaint.

21  89.  PSYSTAR denies the allegation of paragraph 89 of the Complaint.

22  90.  PSYSTAR denies the allegations of paragraph 90 of the Complaint.

23  91.  PSYSTAR denies the allegations of paragraph 91 of the Complaint.

24  92.  PSYSTAR denies the allegations of paragraph 92 of the Complaint.

25

26

27

28

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

**NINTH CLAIM FOR RELIEF**

**(State Unfair Competition)**

93.     PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-92 of the present Answer.

94.     PSYSTAR denies the allegations of paragraph 94 of the Complaint.

95.     PSYSTAR denies the allegations of paragraph 95 of the Complaint.

**TENTH CLAIM FOR RELIEF**

**(Common Law Unfair Competition)**

96.     PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-95 of the present Answer.

97.     PSYSTAR denies the allegations of paragraph 97 of the Complaint.

98.     PSYSTAR denies the allegations of paragraph 98 of the Complaint.

**PRAYER FOR RELIEF**

99.     PSYSTAR expressly denies that the PLAINTIFF is entitled to any of the relief requested in the Claims for Relief.

**GENERAL DENIAL**

100.    PSYSTAR further denies each and every allegation set forth in the Complaint to which PSYSTAR has not specifically admitted, controverted, or denied.

# AFFIRMATIVE DEFENSES

PSYSTAR asserts the following affirmative defenses and reserve the right to allege additional defenses as they are discovered.

## First Affirmative Defense

## (Failure to State a Claim)

The PLAINTIFF has failed to state a claim upon which relief can be granted.

## Second Affirmative Defense

## (Estoppel)

The PLAINTIFF's claims are barred, in whole or in part, by the doctrine of estoppel.

## Third Affirmative Defense

## (Waiver)

The PLAINTIFF's claims are barred, in whole or in part, by the doctrine of waiver.

## Fourth Affirmative Defense

## (Unclean Hands)

The PLAINTIFF's claims are barred, in whole or in part, by the doctrine of unclean hands.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

**Fifth Affirmative Defense**

**(Failure to Mitigate)**

The PLAINTIFF's claims are barred, in whole or in part, by its failure to mitigate any alleged injury and/or its failure to mitigate any alleged damages.

**Sixth Affirmative Defense**

**(Lack of Injury in Fact)**

The PLAINTIFF cannot satisfy its burden of demonstrating that the PLAINTIFF suffered any injury in fact, nor did the PLAINTIFF suffer any such injury.

**Seventh Affirmative Defense**

**(Special Case)**

The PLAINTIFF cannot satisfy its burden, in whole or in part, of demonstrating that the present case is a special case.

**Eighth Affirmative Defense**

**(Lack of Standing to Assert Copyright / Trademark)**

The PLAINTIFF lacks standing to assert a claim of infringement of any alleged copyright and/or trademark including, but not limited to, lack of right, title, and interest to bring an action related to the same.

**Ninth Affirmative Defense**

**(Lack of Infringement of Copyright / Trademark)**

PSYSTAR has not directly or indirectly—by contribution or inducement—infringed any alleged copyright and/or trademark of the PLAINTIFF.

**Tenth Affirmative Defense**

**(Lack of Copyrightable Subject Matter)**

PLAINTIFF's alleged copyrights lack protectable subject matter in that they lack original expression as required by 17 U.S.C. § 102(a) and/or encompass an idea, procedure, process, system, method of operation, concept, principle, or discovery as prohibited by 17 U.S.C. § 102(b).

**Eleventh Affirmative Defense**

**(Fair Use of Copyright)**

Any reproduction, display, derivation, or distribution of any valid copyright of the PLAINTIFF by PSYSTAR is a fair use protected by the provisions of 17 U.S.C. § 107.

**Twelfth Affirmative Defense**

**(First Sale / Exhaustion of Copyright)**

Any distribution of any valid copyright of the PLAINTIFF by PSYSTAR is subject to the first sale doctrine.

**Thirteenth Affirmative Defense**

**(Express License of Copyright)**

Any reproduction, display, derivation, or distribution of any valid copyright of the PLAINTIFF by PSYSTAR is subject to an express license by and between the parties including but not limited to the Apple Public Source License and/or one or more other Open Source licenses.

**Fourteenth Affirmative Defense**

**(Implied License to Copyright)**

Any reproduction, display, derivation, or distribution of any valid copyright of the PLAINTIFF by PSYSTAR is subject to an implied license by and between the parties.

**Fifteenth Affirmative Defense**

**(Failure to Register Copyright)**

PLAINTIFF is prohibited from bringing action against PSYSTAR for the alleged infringement of one or more of PLAINTIFF's copyrights for failure to register said copyrights with the Copyright Office as required by 17 U.S.C. § 411.

**Sixteenth Affirmative Defense**

**(Lack of Willfulness)**

PSYSTAR has not willfully infringed—directly or indirectly—any copyright and/or trademark of the PLAINTIFF.

**Seventeenth Affirmative Defense**

**(Functionality of Trademark)**

One or more of PLAINTIFF's trademarks and/or trade dress is functional as prohibited by 15 U.S.C. § 1052(e)(5).

**Eighteenth Affirmative Defense**

**(Lack of Association / Lack of Indicia of Source)**

One or more of PLAINTIFF's trademarks are not associated with any good or service of the PLAINTIFF nor are the trademarks indicative of source of any good or service.

**Nineteenth Affirmative Defense**

**(Lack of Secondary Meaning of Trademark)**

One or more of PLAINTIFF's trademark and/or trade dress are descriptive and lack requisite secondary meaning within the relevant consuming public as prohibited by 15 U.S.C. § 1052(e)(1).

**Twentieth Affirmative Defense**

**(Generic Term)**

One or more of PLAINTIFF's alleged trademarks are generic terms that do not warrant protection.

**Twenty-First Affirmative Defense**

**(Lack of Actual Confusion)**

There has been no actual confusion with respect to any activity of PSYSTAR and one or more of the trademarks and/or trade dress of the PLAINTIFF.

**Twenty-Second Affirmative Defense**

**(Lack of Likelihood of Confusion)**

There is no likelihood that any members of the relevant consuming public will be confused with respect to any activity of PSYSTAR and one or more of the trademarks and/or trade dress of the PLAINTIFF.

**Twenty-Third Affirmative Defense**

**(Nominative Use of Trademark)**

The use of any trademark of the PLAINTIFF by PSYSTAR is a nominative fair use in that the PLAINTIFF's product or service is not readily identifiable without the use of the trademark; PSYSTAR only uses as much of the trademark as is reasonably necessary to identify the PLAINTIFF's products or services; and PSYSTAR does nothing that would, in conjunction with the trademark, suggest to the relevant consuming public a sponsorship or endorsement by the PLAINTIFF.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

**Twenty-Fourth Affirmative Defense**

**(Fair Use of Trademark)**

The use of any trademark of the PLAINTIFF by PSYSTAR is protected by the Fair Use Doctrine and/or the First Amendment including but not limited to parody, non-commercial use, product comparison, and/or non-competing/non-confusing use.

**Twenty-Fifth Affirmative Defense**

**(Lack of Privity)**

There is no contract by and between PSYSTAR and the PLAINTIFF whereby PSYSTAR could allegedly breach the same.

**Twenty-Sixth Affirmative Defense**

**(Partial Failure of Consideration)**

PLAINTIFF's claims are wholly or partially barred because of a failure of consideration.

**Twenty-Seventh Affirmative Defense**

**(Preemption)**

PLAINTIFF's claims are wholly or partially barred because the contract is preempted in whole or in part by federal law.

## Twenty-Eighth Affirmative Defense

## (Illegality)

PLAINTIFF's claims are wholly or partially barred because the contract is unenforceable on the grounds illegality.

## Twenty-Ninth Affirmative Defense

## (Public Policy)

PLAINTIFF's claims are wholly or partially barred in that the contact is unenforceable as being contrary to the public policy of the law of the State of California.

## Thirtieth Affirmative Defense

## (Unconscionability)

PLAINTIFF's claims are wholly or partially barred in that the contract is unenforceable in that it is procedurally and/or substantively unconscionable.

## Thirty-First Affirmative Defense

## (Vague, Ambiguous, and Otherwise Unintelligible Contract)

The alleged contract utilizes vague, ambiguous, and otherwise unintelligible terms thereby preventing a meeting of the minds as to the scope, rights, and reservations of the alleged contract.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

## Thirty-Second Affirmative Defense
### (Lack of Independently Actionable Claim)

PLAINTIFF's unfair competition claims fail to identify a requisite and independently actionable activity of PSYSTAR giving rise to any alleged unfair competition.

## Thirty-Third Affirmative Defense
### (Severability)

Certain provisions of the alleged contract are unenforceable and therefore severable from any otherwise valid provisions of the contract.

## Thirty-Fourth Affirmative Defense
### (Frustration of Purpose)

Enforcement of the alleged contract by and between the PLAINTIFF and PSYSTAR as alleged by the PLAINTIFF would frustrate and cause the alleged contract to operate in a manner contrary to the purpose of the same.

## Thirty-Fifth Affirmative Defense
### (Consideration Paid in Full)

PSYSTAR has delivered on its consideration in full and the PLAINTIFF, notwithstanding said consideration, now seeks to repudiate the contract.

**Thirty-Sixth Affirmative Defense**

**(Failure to Act in a Commercially Reasonable Manner)**

PLAINTIFF's actions are unreasonable in light of one or more provisions of the California Commercial Code.

**Thirty-Seventh Affirmative Defense**

**(Copyright Misuse)**

The PLAINTIFF has attempted to leverage the rights granted under any valid copyright to areas outside the exclusive rights granted by the Copyright Act. The PLAINTIFF has engaged in certain anticompetitive behavior and/or other actions that are in violation of the public policy underlying the federal copyright laws including, but not limited to, a failure to abide by the fair use and first sale doctrines.

The PLAINTIFF has further engaged in copyright misuse through the use of an illicit trying provision in its end-user license agreement for the Mac OS X with respect to only utilizing the Mac OS X software on Apple-Labeled Computer Hardware Systems and as is further detailed in PSYSTAR's counterclaims for violations of the Sherman Act, Clayton Act, and Cartwright Act, which are incorporated herein by reference. By attempting to enforce this illicit tying provision, the PLAINTIFF is attempting to obtain, maintain, and/or enjoy rights not granted by the Copyright Act including, but not limited to, destroying competition in the Mac OS Capable Computer Hardware Systems market, which is wholly unrelated to any valid copyright.

The PLAINTIFF has further engaged in copyright misuse by utilizing any valid copyright in the Mac OS to maintain its monopoly in the Apple-Labeled Computer Hardware System market and is further detailed in PSYSTAR's counterclaims for violations of the Sherman Act, Clayton Act, and Cartwright Act, which are incorporated herein by reference. By attempting to enforce its End User

License Agreement as it pertains to any valid copyright, PLAINTIFF aims to maintain the aforementioned monopoly, the PLAINTIFF is attempting to obtain, maintain, and/or enjoy rights not granted by the Copyright Act including, but limited to, maintaining its monopoly in the Apple-Labeled Computer Hardware Systems submarket, which is wholly unrelated to any valid copyright.

# COUNTERCLAIM

## Nature of this Action

1.      This is an action under Sections 1 and 2 of the Sherman Act, Section 3 of the Clayton Act, Section 16700 of the California Business and Professions Code (the Cartwright Act), Section 17200 of the California Business and Professions Code, and state common law with respect to the unfair and anticompetitive conduct by counterdefendant APPLE (collectively referred to as the "Counterclaim").

## Jurisdiction and Venue

2.      The First Claim for Relief of this Counterclaim is brought pursuant to 15 U.S.C. § 1 (the Sherman Act) to seek redress for APPLE's illegal tying of the Mac OS to Apple-Labeled Computer Hardware Systems as those products and markets are defined below.

3.      The Second Claim for Relief of this Counterclaim is brought pursuant to 15 U.S.C. § 2 (the Sherman Act) to seek redress for APPLE's attempts to maintain its monopoly and control prices in the Apple-Labeled Computer Hardware Systems submarket and to destroy competition in the Mac OS Capable Computer Hardware Systems market as those markets (and submarkets) are defined below.

4.      The Third Claim for Relief of this Counterclaim is brought pursuant to 15 U.S.C. § 14 (the Clayton Act) to seek redress for APPLE's illegal requirements of its customers to exclusively deal with APPLE as it pertains to the Mac OS and Apple-Labeled Computer Hardware Systems in domestic, interstate commerce.

5.      The Court has jurisdiction over the First, Second, and Third Claims for Relief pursuant to 35 U.S.C. §§ 1331 and 1337.

6.    The Fourth Claim for Relief of this Counterclaim is brought pursuant to the California Cartwright Act, California Business and Professions Code § 16700 *et seq.* to seek redress for APPLE's unlawful conduct in violation of state law.

7.    The facts underlying the Fourth Claim for Relief share a common nucleus of operative facts and law with the first, second, and third claims for relief in this Counterclaim.  This Court, therefore, has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

8.    The Fifth Claim for Relief of this Counterclaim is brought pursuant to California unfair competition law, California Business and Professions Code § 17200 *et seq.* to seeks redress for APPLE's unfair and unlawful conduct in violation of state law.

9.    The facts underlying the Fifth Claim for Relief share a common nucleus of operative facts and law with the first, second, third, and fourth claims for relief in this Counterclaim.  This Court, therefore, has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

10.    The Sixth Claim for Relief of this Counterclaim is brought pursuant to the California common law of unfair competition.

11.    The facts underlying the Sixth Claim for Relief share a common nucleus of operative facts and law with the First, Second, Third, and Fourth Causes of Action in this Counterclaim.  This Court, therefore, has supplemental subject matter jurisdiction pursuant to 27 U.S.C. § 1367.

12.    This Counterclaim is a compulsory counterclaim brought in accordance with Federal Rule of Civil Procedure 13(a)(1) in that the aforementioned causes of action arise out of the transaction or occurrence that is the subject matter of APPLE's claim and does not require adding another party over which the Court cannot acquire jurisdiction.

## The Parties

13.     APPLE is a California Corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.  APPLE markets the Macintosh Computer and the OS X Operating System (the "Mac OS").

14.     Counterclaimant PSYSTAR is a Florida Corporation with its principal place of business at 10475 NW 28th Street, Doral, Florida, 33172.

15.     PSYSTAR manufactures and distributes computers tailored to customer choosing.  As a part of its devotion to supporting customer choice, PSYSTAR supports a wide range of operating systems including Microsoft Windows XP and XP 64-bit, Windows Vista and Vista 64-bit, Linux (32 and 64-bit kernels), and the Mac OS.  PSYSTAR generally refers to this custom tailored line of computers as Open Computers.

16.     Open Computers are personal computers that, in the case of the Mac OS, work like a Macintosh including the latest Macintosh operation system—OS X.5 (a.k.a. Leopard).  PSYSTAR Open Computers, again in the case of the Mac OS, run the OS X like that of a Macintosh from APPLE albeit on a computer hardware system offered at a considerably lower price and with considerably higher performance.  For example, one of the least expensive Macintosh machines on the market is for the Mac Mini, which PSYSTAR is informed and believes, and thereon alleges, costs more than that of an Open Computer from PSYSTAR.  PSYSTAR is informed and believes, and thereon alleges, that the Mac Mini offers poorer performance, smaller storage space, and RAM. Furthermore, the Mac Mini does not have the option for an alternative video card such as an NVIDIA GeForce 8600, which is supported by the PSYSTAR Open Computer.

## General Allegations

**The Relevant Markets**

17.     For the purposes of the present Counterclaim, PSYSTAR is informed and believes, and thereon alleges, that there are two relevant product markets.  The first product market is that of the Mac OS.  The second product market is that of computer hardware capable of executing the Mac OS ("Mac OS Capable Computer Hardware Systems").  Within the Mac OS Capable Computer Hardware Systems market is a subsidiary market artificially created, dominated, and maintained by APPLE—the Apple-Labeled Computer Hardware Systems submarket.  The relevant geographic market is, in both instances, the United States of America.

   **The Mac OS**

18.     The Mac OS is a graphical user interface-based operating system that is operable exclusively on the Macintosh line of computer hardware and other computer hardware made by and available only from APPLE.  On information and belief, PSYSTAR alleges that APPLE is the exclusive manufacturer and master licensor of the Mac OS.  Operating systems like the Mac OS control and direct the interaction between software applications such as word processors, Internet browsers, and applications and the central processing unit of the computer and its various hardware components.

19.     APPLE, as noted above, is the exclusive manufacturer and/or licensor of the Mac OS. APPLE, therefore, possesses monopoly power in the Mac OS market.  As addressed herein, PSYSTAR is informed and believes, and thereon alleges, that the Mac OS market is distinct and unique as compared to other operating systems in the marketplace including but not limited to the Windows operating system from Microsoft Corporation.  As such, PSYSTAR alleges on information and belief that the Windows operating system is not and cannot be considered an effective substitute for the Mac OS; the same holds true for any other operating system. PSYSTAR, in that regard, is informed and believes, and thereon alleges, that other operating systems are not reasonably interchangeable by consumers with respect to the Mac OS.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

20.     PSYSTAR is informed and believes, and thereon alleges, that there are substantial barriers to entry in the market for operating systems, including the Mac OS market.  It is prohibitively difficult, time-consuming, and expensive to create any operating system much less one that would offer substantially identical functionality, security, stability, and other aspects offered by the Mac OS.  As such, a potential new operating system entrant faces an almost insurmountable barrier to successful entry to the operating system market, in general, but specifically the Mac OS market.

### Mac OS Capable Computer Hardware Systems

21.     Computer hardware systems, in general, perform central processing unit functions. Operating systems—like the Mac OS—manage the interaction between various pieces of hardware such as a monitor or printer.  The operating system also manages various software applications running on a computing device.

22.     A seemingly infinite list of manufacturers may be found in the computer hardware system marketplace.  These manufacturers construct entire hardware systems (*i.e.*, computers) marketed and sold to the consumer either directly or via an authorized re-seller.  The participants in the computer hardware system marketplace include Dell, Acer, Lenovo, Sony, and Hewlett-Packard to name but a few.

23.     Any number of companies dedicated to manufacturing and sourcing various components used by the aforementioned manufacturers (*e.g.*, hard drives (Western Digital), processors (Intel and AMD), graphics processing cards (NVIDIA)) also exist.

24.     PSYSTAR is informed and believes, and thereon alleges, that one or more of these manufacturers of computer hardware systems are capable and desirous of manufacturing computer hardware systems that host, execute, and run the Mac OS.  PSYSTAR is informed and believes, and thereon alleges, that there is no compelling technological reason that any one of the aforementioned computer hardware system manufacturers could not manufacture and sell computer hardware systems capable of hosting, executing, and running the Mac OS.  PSYSTAR, therefore, is informed and believes, and thereon alleges, that these entities constitute a market that PSYSTAR hereinafter refers to as the Mac OS Capable Computer Hardware Systems market.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

25.     PSYSTAR is informed and believes, and thereon alleges, that competition amongst members of the Mac OS Capable Computer Hardware Systems market exists notwithstanding the Mac OS and APPLE's otherwise exclusionary conduct as detailed below.  PSYSTAR is informed and believes, and thereon alleges, that the Mac OS Capable Hardware Systems market is separate and distinct from the Mac OS market.

26.     On information and belief, PSYSTAR alleges that there is no technical reason that a third-party could not accumulate and assemble the hardware components in an Apple-Labeled Computer Hardware System such that said system would be capable of running the Mac OS, that is, such that the system would constitute a Mac OS Capable Computer Hardware System.  On information and belief PSYSTAR alleges that but for the exclusionary conduct of APPLE and other conduct amounting to unfair competition, as set forth in greater detail herein, and as exemplified by the activities of PSYSTAR, a third-party could and would assemble the hardware components capable of running the Mac OS.

**Apple-Labeled Computer Hardware Systems**

27.     PSYSTAR is informed and believes, and thereon alleges, that notwithstanding such diverse competition amongst computer hardware manufacturers, none of the aforementioned companies currently manufacture computer hardware systems that support the Mac OS.  APPLE is the only manufacturer of systems operating the Mac OS.  APPLE's exclusive line of hardware systems that support the Mac OS include the Mac Pro, the Mac Mini, the MacBook, the MacBook Air, MacBook Pro, and iMac.  For the purposes of this Counterclaim, the exclusive line of APPLE hardware systems that support the Mac OS are referred to as Apple-Labeled Computer Hardware Systems.  PSYSTAR is informed and believes, and thereon alleges, that but for the anticompetitive conduct of APPLE as outlined herein, Apple-Labeled Computer Hardware Systems would otherwise be a competing member of the otherwise diverse Mac OC Capable Computer Hardware market.  That is, APPLE's anticompetitive conduct has created a subsidiary market within the Mac OS Capable Computer Hardware Systems market of which APPLE is the only member and wields monopoly power.

28.     On information and belief, PSYSTAR alleges that by virtue of APPLE's own End User License Agreement (EULA), and various other anti- and unfair competitive conduct as set forth in greater detail herein, there is no viable alternative to Apple-Labeled Computer Hardware Systems for users who wish to use the Mac OS, for a prospective buyer of the Mac OS, or for a user of an older version of the Mac OS other than the forced purchase of an Apple-Labeled Computer Hardware System.  Without an operating system, a computer hardware system can perform virtually no useful tasks thus making the installation of the Mac OS a necessity.  In light of the importance of an operating system, the potential benefit to a monopolist and the potential economic and social cost of monopolization in a second market—the Apple-Labeled Computer Hardware Systems submarket vis-à-vis the Mac OS Capable Computer Hardware Systems market—is very high.

29.     On information and belief, PSYSTAR alleges that the Mac OS, Apple-Labeled Computer Hardware Systems, and Mac OS Capable Computer Hardware Systems that are denied operability (technologically or contractually) with the Mac OS are all sold in domestic, interstate commerce.

**The Mac OS Market is Distinct From and Lacks Interchangeability with Other OSs**

30.     On information and belief, PSYSTAR alleges that there is a recognized and distinct product market in the Mac OS.  APPLE has taken great efforts to define the Mac OS as a separate and distinct market especially with respect to any and all other operating systems.  APPLE's efforts are not in vain as consumers and merchants have come to recognize the Mac OS as a separate and distinct market with respect to any and all other operating systems, especially the Windows operating system from Microsoft.

        *"Think Different"*

31.     PSYSTAR is informed and believes, and thereon alleges, that APPLE's efforts to define the Mac and Mac OS as an environment of its own began no later than 1997 when APPLE released its *Think Different* advertising campaign.  APPLE used the *Think Different* campaign in both print and television mediums.  In this campaign, APPLE sought to distinguish itself as a significant,

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

historical differentiator by placing the company in the context of the likes of Albert Einstein, Bob Dylan, Thomas Edison, Mahatma Gandhi, Frank Lloyd Wright, and Pablo Picaso among others. The television advertisement was accompanied by a voice over stating *inter alia*:

> "[h]ere's to the crazy ones. The misfits. The rebels. The troublemakers. . . . You can praise them, disagree with them, quote them, disbelieve them, glorify or vilify them. About the only thing you can't do is ignore them. Because they change things. . . . While some see them as the crazy ones, we see genius. Because they people who are crazy enough to think they can change the world, are the ones who do."

32.    APPLE utilized a print advertisement campaign, as well, wherein APPLE computers and consumer electronic devices were pictured alongside the *Think Different* slogan. Another series of print advertisements utilized a portrait of historical innovators that changed the world alongside the APPLE logo without reference to any particular product.

33.    On information and belief, PSYSTAR alleges that APPLE sought to establish a counter-culture image—including and especially with respect to the traditional Windows based computing environment—through its *Think Different* campaign. PSYSTAR is informed and believes, and thereon alleges, that this campaign was successful in that the *Think Different* campaign has been referred to as 'The Ad Campaign That Restored Apple's Reputation.'

*"Get a Mac"*

34.    PSYSTAR is informed and believes, and thereon alleges, that APPLE continued to distinguish the Mac OS from the Windows operating system in its *Get a Mac* campaign, which commenced in 2006 and continues to the present. Through this campaign, actor Justin Long, in casual dress, introduces himself as a Mac while another actor, John Hodgman, identifies himself as a PC running the Microsoft Windows operating system; the PC character is dressed in formal, stuffy attire. The Mac and the PC then 'act out' and describe how their capabilities and attributes differ. While the vignettes differ from commercial-to-commercial, they all convey an identical message—a Mac is not a Windows-Based PC and a Windowed-Based PC is certainly not a Mac. The Mac OS and Windows operating system are not merely differing operating systems with no

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1  interchangeability but cultural icons representative of different lifestyles, markets, and that the

2  computing devices of each environment are used for wholly different audiences.

3  35.    PSYSTAR is informed and believes, and thereon alleges, that APPLE intends to convey the

4  message that a Mac user would not use a Windows-Based PC and a Windows-Based PC user would

5  not use a Mac, lending credence to the cultural adage 'once you've had Mac, you never go back.'

6  *InsideCRM* has, in fact, directly referenced APPLE's *I'm a Mac* advertising campaign with respect

7  to APPLE attempting to create "a hip brand" and "strong identification" wherein "[t]he Mac guy is

8  smooth and confident, while [the] PC appears uptight and old."  The message is, "[o]nce you've

9  become smooth, would *you* want to go back to uptight?"  PSYSTAR is informed and believes, and

10 thereon alleges, that APPLE intends to convey the message that Mac users—users of the Mac OS—

11 do not nor will they ever switch to a PC and the Windows operating system environment.

12

13     **Lack of Cross-Elasticity and SSNIP**

14 36.    PSYSTAR is informed and believes, and thereon alleges, that marketplace economics

15 likewise support the assertion that the Windows operating environment is not a viable substitute for

16 the Mac OS.  For example, the MacBook is one of the cheapest Macintosh products commercially

17 available that includes the Mac OS and traditional computer components (*e.g.*, a monitor and a

18 keyboard).  A MacBook with a 2.1GHz Intel Core 2 Duo processor, 1GB memory, 120GB hard

19 drive, and combo drive sells for approximately $1,099.00 from the apple.com website.  A similarly

20 configured computer running an operating system other than the Mac OS retails at dell.com for

21 approximately $674.00, which is nearly $500 less than that of its Mac OS and Apple-Labeled

22 Computer Hardware System counterpart.

23 37.    PSYSTAR is informed and believes, and thereon alleges, that a top of the line MacBookPro

24 with 2.5GHz Intel Core 2 Duo processor, 2GB memory, 250GB hard drive, Double-layer

25 SuperDrive, and 512MB NVIDIA GeForce 8600M GT graphics card sells for approximately

26 $2,799.00 from the apple.com website.  A similarly configured computer (albeit with superior

27 hardware components versus that of the MacBookPro) and running an operating system other than

28

1    the Mac OS retails at dell.com for approximately $2,300.00, which is nearly $500 less than that of

2    its Mac OS and Apple-Labeled Computer Hardware System counterpart.

3    38.      PSYSTAR is informed and believes, and thereon alleges, that there is a substantial, upward

4    price differentiation between the Mac OS / Apple-Labeled Computer Hardware Computer System

5    and that of a Mac OS Capable Computer Hardware System running a non-Mac OS variant and, in

6    some instances, with superior hardware.  Notwithstanding the consistent upward differentiation in

7    price across a broad spectrum (*i.e.*, from the least expensive Apple-Labeled Computer Hardware

8    System to the most expensive Apple-Labeled Computer Hardware System) by and between a

9    Computer Hardware System without a Mac OS and a Apple-Labeled Computer Hardware System

10   with the Mac OS, studies by Satmetrix Systems found that Apple is known for its "market

11   performance and brand leadership" and that APPLE "far outranks its closest competitor."  Further,

12   APPLE is "well known for its passionate and dedicated customer base."

13   39.      PSYSTAR is informed and believes, and thereon alleges, that APPLE's customer loyalty is

14   well-established notwithstanding the higher prices of an Apple-Labeled Computer Hardware

15   System versus those of a similarly situated non-APPLE product.  APPLE customers have, in fact,

16   been referred to by *Seeking Alpha* as "zealots" and "fanboys" in addition to "Mac loyalists."  These

17   customers, accordingly to *Seeking Alpha*, will "defend the company and its products in any debate

18   going on around them."

19   40.      PSYSTAR is informed and believes, and thereon alleges, that customers of APPLE and

20   users of the Mac OS would not consider any other operating system, including but not limited to

21   the Windows operating system from Microsoft, to be a reasonably interchangeable alternative much

22   less one that serves the same purpose as the Mac OS.

23   41.      PSYSTAR is informed and believes, and thereon alleges, that any other operating system,

24   including but not limited to the Windows operating system lacks the potential or ability to deprive

25   APPLE of its customers, especially at a significant level of business as it concerns the Mac OS.

26   42.      PSYSTAR is informed and believes, and thereon alleges, that there is insufficient cross-

27   elasticity of demand with respect to the Mac OS and any other operating system, including but not

28   limited to the Windows operating system.  PSYSTAR is informed and believes, and thereon

alleges, that APPLE has made a conscious and successful effort to create inelasticity of demand through product differentiation in its Mac OS and with respect to its advertising and perception to consumers in the marketplace. PSYSTAR is informed and believes, and thereon alleges, that APPLE seeks to embed in the mind of consumers and the marketplace as a whole that there is no substitute for the Mac OS, including but not limited to the Windows operating system or Linux. PSYSTAR is informed and believes, and thereon alleges, that APPLE attempts to distinguish the Mac OS from any other operating systems in the market through, at the least, its user interface, which APPLE admits in its Complaint with respect to novelty (¶ 2); ease-of-use and pleasure (¶¶ 3, 8); speed and stability (¶ 4); visual appearance and elegance (¶¶ 4, 8); careful, powerful, and polished conception (¶ 5); uniqueness and creativity (¶ 5); and acclaim in the market (¶ 6).

43. PSYSTAR is informed and believes, and thereon alleges, that a percentage change in price of one product, namely the Mac OS, will not result in a change in quantity that consumers will demand of another product as is evidenced by the price differentiations and allegations as made by APPLE in its *Complaint* and as otherwise set forth above.

44. PSYSTAR is further informed and believes, and thereon alleges, that a 'small but significant non-transitory increase in price' (SSNIP), including one of at least five percent in the Mac OS, will not result in a change in demand for the Mac OS. PSYSTAR is informed and believes, and thereon alleges, that such a SSNIP would not likely result in consumers of the Mac OS or Apple-Labeled Computer Hardware Systems or potential purchasers of the Mac OS or Apple-Labeled Computer Hardware Systems electing to purchase another operating system, such as the Windows operating system. PSYSTAR is informed and believes, and thereon alleges, that APPLE, as a monopolist in the Mac OS market, could profitably impose a SSNIP with respect to the Mac OS and not suffer a material loss of customers choosing a substitute product, such as the Windows operating system. The nearly $500 price differentiation as illustrated above is, at the least, suggestive of the same.

45. PSYSTAR, on information and belief, therefore alleges that the Windows operating system—and any other third-party operating system for that matter—does not constitute a viable substitute product and should not be included in defining the relevant market. In that regard,

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1   PSYSTAR, on information and belief, alleges that the first relevant market is that of the Mac OS to

2   the exclusion of other operating systems.

3

4   **Apple's Anticompetitive Conduct**

5   46.      PSYSTAR, on information and belief, alleges that APPLE is content with the knowledge of

6   having monopoly power in the Mac OS market and that nearly insurmountable barriers exist with

7   respect to any other entity introducing a Mac OS-like operating system.  PSYSTAR is informed

8   and believes, and thereon alleges, that the most significant potential threat to APPLE and the Mac

9   OS market is, therefore, not from a new operating system but from computer hardware system

10  manufacturers that may offer a hardware platform upon which to run the Mac OS—Mac OS

11  Capable Computer Hardware Systems.  Any such hardware platform could compete directly with

12  Apple-Labeled Computer Hardware Systems, which are manufactured by APPLE and available for

13  purchase only from APPLE and/or its authorized resellers.

14  47.      PSYSTAR is informed and believes, and thereon alleges, that in order to protect its valuable

15  monopoly in the Mac OS market and, by extension, Apple-Labeled Computer Hardware Systems

16  from potential competitive threats, and to potentially extend its Mac OS monopoly into other

17  markets, APPLE has engaged in a series of anticompetitive activities.  PSYSTAR is further

18  informed and believes, and thereon alleges, that APPLE's conduct includes agreements tying the

19  Mac OS to—and only to—Apple-Labeled Hardware Systems, exclusionary agreements precluding

20  customers or would be competitors from installing, running, or using the Mac OS on any computer

21  hardware system that is not an Apple-Labeled Computer Hardware System, that is, Mac OS

22  Capable Computer Hardware Systems.

23  48.      PSYSTAR is informed and believes, and thereon alleges, that manufacturers of Mac OS

24  Capable Computer Hardware Systems that could run the Mac OS and that are not Apple-Labeled

25  Computer Hardware Systems pose a significant competitive threat to APPLE with respect to the

26  quality of such hardware systems and the pricing of such systems.  If Mac OS Capable Computer

27  Hardware Systems that are not Apple-Labeled Systems were introduced into the overall

28  marketplace, APPLE would be forced to engage in significant research, development, and quality

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1 improvement in computer hardware; APPLE would, further, be forced into price competition with

2 other Mac OS Capable Computer Hardware System manufacturers.

3 49.     On information and belief, PSYSTAR alleges that in or around 1995, APPLE launched an

4 official clone program (the "Clone Program").  On information and belief, PSYSTAR alleges that

5 as a part of APPLE's Clone Program, Macintosh ROMs and system software were licensed to other

6 computer hardware manufacturers who agreed to pay a royalty for each 'cloned' computer sold.

7 50.     On information and belief, PSYSTAR alleges that from 1995 to 1997, it was possible to buy

8 a PowerPC-based computer running the Mac OS from, at the least, Power Computing Corporation.

9 On information and belief PSYSTAR alleges that other licensees and members of the Clone

10 Program included Motorola, Radius, APS Technologies, DayStar Digital, and UMAX.

11 51.     PSYSTAR, on information and belief, alleges that in what was to be the start of a trend of

12 increasingly anticompetitive conduct with respect to excluding others in the marketplace from

13 selling computer hardware systems capable of operating the Mac OS, APPLE elected to end the

14 Clone Program in or about 1997.  APPLE's election to end the Clone Program accelerated at about

15 the same time as the return of Steve Jobs to APPLE as its Chief Executive Officer.

16 52.     On information and belief, PSYSTAR alleges that the APPLE Clone Program came to a *de*

17 *facto* end with the release of Mac OS 8, which, unlike certain prior iterations of the Mac OS, had no

18 official licensee program.

19 53.     On information and belief, PSYSTAR alleges that APPLE further sought to discontinue the

20 Clone Program through the purchase of Power Computing Corporation, a very successful and

21 viable manufacturer of a computer hardware system capable of running the Mac OS.

22 54.     On information and belief, PSYSTAR alleges that the Mac OS 9 was released on or about

23 October 23, 1999 without any official licensee program.  On information and belief, PSYSTAR

24 alleges that updates to the Mac OS 9—up to and including Mac OS 9.2.2 on December 6, 2001—

25 were also released without any official licensee program.

26 55.     PSYSTAR is informed and believes, and thereon alleges, that APPLE's trend of releasing

27 subsequent iterations of the Mac OS without an official licensee program continued with respect to

28 the Mac OS X.  In June 2005 at the 2005 Worldwide Developer Conference, APPLE CEO Steve

Jobs announced the planned release of the aforementioned Mac OS X for late 2006 or early 2007. At the same conference, APPLE Senior Vice President Phil Schiller noted that APPLE had no plans of running the Windows OS on a Macintosh but noted "[t]hat doesn't preclude someone from running it" and that APPLE "won't do anything to preclude that."

56.     In contrast to allowing (and all but inviting) others to run a competing OS on a Macintosh and, further, openly stating that APPLE would not do anything to preclude the same, Schiller stated that APPLE did not plan to let people run the Mac OS X on other computer makers' hardware; said Schiller: "[w]e will not allow running Mac OS X on anything other than an Apple Mac."

57.     True to its word, and by its own admission in paragraph 18 of APPLE's Complaint, APPLE "prohibit[s] use of the Mac OS or its upgrades on non-Apple hardware."

58.     On information and belief, PSYSTAR alleges that APPLE intentionally embeds code in the Mac OS that causes the Mac OS to recognize any computer hardware system that is not an Apple-Labeled Computer Hardware System.  Upon information and belief, PSYSTAR alleges that upon recognizing that a computer hardware system is not an Apple-Labeled Computer Hardware System, the Mac OS will not operate properly, if at all, and will go into what is colloquially known as 'kernel panic.'  Through kernel panic, the operating system believes that it has detected an internal and fatal error from which the operating system cannot recover.  As a result, the operating system discontinues operation.  As noted above, without a functioning operating system, functionality of the corresponding computer is reduced to near zero.

59.     PSYSTAR is informed and believes, and thereon alleges, that the Mac OS need not go into kernel panic as the Mac OS is otherwise capable of operating on any number of computer hardware systems that are not Apple-Labeled Computer Hardware Systems, that is, Mac OS Capable Computer Hardware Systems.  PSYSTAR is informed and believes, and thereon alleges, that the kernel panic is self-induced by APPLE's embedding of code to prevent operability on computer hardware systems that are not Apple-Labeled Computer Hardware Systems, that is, Mac OS Capable Computer Hardware Systems.

60.     PSYSTAR is informed and believes, and thereon alleges, that APPLE is engaged in anticompetitive conduct that prevents the proper operation of the Mac OS on any computer

hardware system that is not an Apple-Labeled Computer Hardware System—a Mac OS Capable Computer Hardware System—thereby forcing customers of the Mac OS to purchase—and only purchase—an Apple-Labeled Computer Hardware System if they wish to have the Mac OS operate sans kernel panic.

61.     In addition to technically preventing the Mac OS from operating on any Mac OS Capable Computer Hardware System and that is not an Apple-Labeled Computer Hardware System, the EULA for the Mac OS X Leopard and MAC OS X Leopard Server (collectively referenced herein as the aforementioned Mac OS), specifically—and, again, by APPLE's own admission in paragraph 19 of its Complaint—states:

> "1.  General.  The software (including Boot ROM Code) . . . accompanying this License whether preinstalled on Apple-labeled hardware, on disks, in read only memory, or any other media or in any other form (collectively the 'Apple Software') are licensed, not sold, to you by Apple Inc. ('Apple') for use **only under the terms of this License** . . . ."

> 2.  Permitted License Uses and Restrictions.

> A.  <u>Single Use</u>.  This license allows you to install, use and run (1) copy of the Apple Software on a single **Apple-labeled computer** at a time.  **You agree not to install, use, or run the Apple Software on any non-Apple-Labeled computer or enable another to do so.**

(emphasis added).

62.     Thus, as a pre-condition of a license to the Mac OS, APPLE unlawfully requires customers to agree to install, use, or run the Mac OS on—and only on—Apple-Labeled Computer Hardware Systems.  As such, a customer is prohibited from seeking out and choosing any other computer hardware system that is not an Apple-Labeled Computer Hardware System—including but not limited to a Mac OS Capable Computer Hardware System—on which to install, use, and run the Mac OS.

63.     PSYSTAR is informed and believes, and thereon alleges, that APPLE unlawfully ties the Mac OS to Apple-Labeled Computer Hardware Systems.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

64.     PSYSTAR is informed and believes, and thereon alleges, that APPLE is attempting to maintain its monopoly in the artificially created Apple-Labeled Computer Hardware System submarket by utilizing its monopoly power in the Mac OS through systematic destruction of competition to the Apple-Labeled Computer Hardware System that might otherwise exist vis-à-vis a Mac OS Capable Computer Hardware System.

65.     PSYSTAR is informed and believes, and thereon alleges, that APPLE has contractually prohibited its customers, through the EULA, from installing, using, or running the Mac OS on any system that is not an Apple-Labeled Computer Hardware System.

66.     PSYSTAR is informed and believes, and thereon alleges, that APPLE refuses to license the Mac OS to any other computer hardware system manufacturer, that is, a Mac OS Capable Computer Hardware System manufacturer.

67.     On information and belief, PSYSTAR alleges that as a result of the aforementioned conduct, competition in the Mac OS Capable Computer Hardware System market with respect to the illicitly tied Mac OS and Apple-Labeled Computer Hardware Systems submarket is, notwithstanding PSYSTAR, essentially non-existent.  PSYSTAR is informed and believes, and thereon alleges, that APPLE has successfully eliminated competition and continues to ensure that no competition arises in the Mac OS Capable Computer Hardware System market with respect to the Mac OS and Apple-Labeled Computer Hardware Systems vis-à-vis illicit contractual and licensing practices and the misuse of its intellectual property, including its copyrights, the latter of which includes attempts to obtain, maintain, and/or enjoy rights not granted by the Copyright Act including, extension and/or maintenance of monopoly power in certain of the defined markets.

68.     PSYSTAR is informed and believes, and thereon alleges, that with competition eliminated in the Mac OS Capable Computer Hardware System market as it pertains to the Mac OS and Apple-Labeled Computer Hardware Systems, APPLE is free to control and charge customers supra-competitive prices as suggested with respect to the pricing of various Apple-Labeled Computer Hardware Systems against otherwise functional equivalents that would exist in the Mac OS Capable Computer Hardware Systems marketplace.

1  69.      PSYSTAR is informed and believes, and thereon alleges, that APPLE's conduct with

2  respect to the Mac OS requires its end users, therefore, to deal exclusively with APPLE through the

3  purchase and use of only Apple-Labeled Computer Hardware Systems.

4  70.      Through APPLE's requirement that end users exclusively utilize Apple-Labeled Computer

5  Hardware Systems to the exclusion of all other Mac OS Capable Computer Hardware Systems in

6  the marketplace, PSYSTAR is informed and believes, and thereon alleges, that APPLE has, at the

7  least, substantially lessened competition in the Mac OS Capable Computer Hardware Systems

8  marketplace if not eliminated it in its entirety.  APPLE, as a result, maintains its monopoly position

9  with respect to the Mac OS and the artificially created Apple-Labeled Computer Hardware System.

10 71.      PSYSTAR is informed and believes, and thereon alleges, that APPLE's pattern of conduct

11 makes it clear that unless restrained, APPLE will continue to misuse the EULA for the Mac OS and

12 various intellectual properties including copyrights related to the Mac OS to artificially exclude

13 competition from Mac OS Computer Hardware System manufacturers thereby depriving customers

14 of a free choice between Mac OS Capable Computer Hardware Systems that would otherwise be

15 capable of running the Mac OS.

16 72.      PSYSTAR is informed and believes, and thereon alleges, that APPLE has unreasonably

17 restrained and, unless enjoined, will continue to unreasonably restrain competition from the Mac

18 OS Capable Computer Hardware Systems market.  These unreasonable restraints on trade allow

19 APPLE to maintain its monopoly position with respect to the Mac OS and Apple-Labeled

20 Computer Hardware Systems submarket not because customers have freely chosen an Apple-

21 Labeled Computer Hardware System but because of the illegal exercise of monopoly power by

22 APPLE.

23 73.      On information and belief, PSYSTAR alleges that APPLE would enjoy significant

24 advantages with respect to maintaining its monopoly position in the Mac OS market and the Apple-

25 Labeled Computer Hardware Systems submarket.  On information and belief, PSYSTAR alleges

26 that APPLE would further enjoy a benefit by preventing competition from the Mac OS Capable

27 Computer Hardware Systems market by tying the Mac OS to Apple-Labeled Computer Hardware

28 Systems and otherwise misusing its intellectual property including copyrights with respect to the

1  same. On information and belief, PSYSTAR alleges that APPLE would further enjoy a benefit by

2  technically and/or contractually excluding other manufacturers from manufacturing Mac OS

3  Capable Computer Hardware Systems market rather than having to compete on the merits with

4  Apple-Labeled Computer Hardware Systems.

5  74.    PSYSTAR is informed and believes, and thereon alleges, that the anticompetitive

6  technological and contractual conduct of APPLE reduce the incentives and abilities of Mac OS

7  Capable Computer Hardware System manufacturers that would otherwise compete with Apple-

8  Labeled Computer Hardware Systems on the merits from innovating and differentiating their

9  products in ways that would further facilitate competition in the Mac OS Capable Computer

10  Hardware System market. As a result, APPLE is allowed to unfairly maintain market power in the

11  Mac OS Capable Computer Hardware System market.

12  75.    The present Counterclaim does not seek to inhibit APPLE from competing on the merits by

13  innovation, but does challenge APPLE's concerted attempts to maintain its monopoly in the Mac

14  OS and Mac OS Capable Computer Hardware System market and to ultimately achieve dominance

15  in other markets, not by innovation and other competition on the merits, but by tie-ins, exclusive

16  dealing contracts, copyright misuse, and other anticompetitive agreements that deter innovation,

17  exclude competition, and deny customers of their right to choose among competing alternatives

18  76.    PSYSTAR is informed and believes, and thereon alleges, that APPLE's conduct adversely

19  affects innovation, including by impairing the incentive of APPLE's would-be competitors in the

20  Mac OS Capable Computer Hardware Systems market and potential competitors to undertake

21  research and development, because they know that APPLE can limit and has in the past limited the

22  rewards from any resulting innovation; impairing the ability of APPLE's competitors and potential

23  competitors to obtain financing for research and development; inhibiting APPLE's competitors that

24  nevertheless succeed in developing promising innovations from effectively marketing their

25  improved products to customers of the Mac OS; reducing the incentive and ability of Computer

26  Hardware Systems manufacturers to innovate and differentiate their products in ways that would

27  appeal to customers; and reducing competition and the spur to innovation by APPLE and others

28  that only competition can provide.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

77.     PSYSTAR is informed and believes, and thereon alleges, that the purpose and effect of APPLE's conduct with respect to the Mac OS and Mac OS Capable Computer Hardware Systems that are not Apple-Labeled Computer Hardware Systems have been and, if not restrained, will be to preclude competition on the merits between Apple-Labeled Computer Hardware Systems and other Mac OS Capable Computer Hardware System manufacturers and to maintain APPLE's Mac OS monopoly in the Apple-Labeled Computer Hardware System market.  PSYSTAR, at the very least, has been harmed through such anticompetitive conduct.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

**Claims for Relief**

**First Claim for Relief**

**(Unlawful "Tying" in Violation of Section 1 of the Sherman Act)**

**(15 U.S.C. § 1)**

78.     PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-77 of this Counterclaim as if fully set forth herein.

79.     PSYSTAR, on information and belief, alleges that the Mac OS market and Apple-Labeled Computer Hardware Systems submarket, which is an artificially created subset of the Mac OS Capable Computer Hardware Systems market, are separate product markets.

80.     PSYSTAR, on information and belief, alleges that the Mac OS and Apple-Labeled Computer Hardware Systems, as a subset of the artificially created Mac OS Capable Computer Hardware Systems, are sold in the different product markets.

81.     PSYSTAR, on information and belief, alleges that the Mac OS and Mac OS Capable Computer Hardware Systems including Apple-Labeled Computer Hardware Systems have different functions.

82.     PSYSTAR, on information and belief, alleges that the Mac OS and Mac OS Capable Computer Hardware Systems have separate demand and are treated by industry participants as separate products.

83.     PSYSTAR, on information and belief, alleges that market efficiencies would exist should APPLE not to tie the Mac OS and Apple-Labeled Computer Hardware Systems.

84.     PSYSTAR, on information and belief, alleges that market efficiencies would exist should APPLE permit the licensing of the Mac OS without the requirement of a purchase of an Apple-Labeled Computer Hardware System.

85.     PSYSTAR, on information and belief, alleges that APPLE has sufficient market power in the Mac OS market to affect the Mac OS Capable Computer Hardware Systems market.

86.     PSYSTAR, on information and belief, alleges that APPLE has tied and will continue to tie the Mac OS to Apple-Labeled Computer Hardware Systems in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

87.     PSYSTAR, on information and belief, alleges that the purpose of tying the Mac OS to Apple-Labeled Computer Hardware Systems is to prevent customers from choosing among computer hardware systems—Mac OS Capable Computer Hardware Systems—on their merits and to foreclose competing Mac OS Capable Computer Hardware Systems from competing with Apple-Labeled Computer Hardware Systems thereby restraining competition.

88.     PSYSTAR, on information and belief, alleges that the effect of tying the Mac OS is to force customers into buying Apple-Labeled Computer Hardware Systems that the customer did not wish to acquire or might have preferred to purchase in the form of alternative Mac OS Capable Computer Hardware Systems (*i.e.*, a non-Apple-Labeled Computer Hardware System) from an alternative supplier (*i.e.*, not APPLE) on different terms.

89.     PSYSTAR, on information and belief, alleges that APPLE's tying of the Mac OS to Apple-Labeled Computer Hardware Systems affects a substantial amount of commerce in the Mac OS Capable Computer Hardware Systems market.

90.     PSYSTAR, on information and belief, alleges that APPLE's tying of the Mac OS to Apple-Labeled Computer Hardware Systems is unlawful *per se* under the antitrust laws.

91.     PSYSTAR, on information and belief, alleges that APPLE's tying of the Mac OS to Apple-Labeled Computer Hardware Systems is unlawful under the antitrust laws because the anticompetitive effects of APPLE's tying conduct are not outweighed by pro-competitive considerations.

92.     PSYSTAR, as a result of APPLE's illicit tying behavior, has been damaged and requests compensatory relief in addition to a declaration as to APPLE's illicit behavior.

**Second Claim for Relief**

**(Monopoly Maintenance in Violation of Section 2 of the Sherman Act)**

**(15 U.S.C. § 2)**

93.     PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-92 of this Counterclaim as if fully set forth herein.

94.     PSYSTAR, on information and belief, alleges that APPLE possesses monopoly power in the Mac OS market.

95.     PSYSTAR, on information and belief, alleges that APPLE possess certain intellectual properties including copyrights relating to the Mac OS thereby further enforcing its monopoly power in the Mac OS market.

96.     PSYSTAR, on information and belief, alleges that given the prevalence of the Mac OS in the Mac OS market, customers need a computer hardware system on which to operate the Mac OS.

97.     PSYSTAR, on information and belief, alleges that although a number of competing computer hardware systems manufacturers exist in the marketplace and that would otherwise be capable of manufacturing Mac OS Capable Computer Hardware Systems, APPLE contractually requires the end user to install, use, and run the Mac OS solely on Apple-Labeled Computer Hardware Systems.

98.     PSYSTAR, on information and belief, alleges that this contractual requirement by and between APPLE and the end user is to the exclusion of all other computer hardware systems manufacturers in the marketplace including Mac OS Capable Computer Hardware System manufacturers.

99.     PSYSTAR, on information and belief, alleges that through this anticompetitive conduct, APPLE is attempting—with specific intent—to unlawfully maintain its market and monopoly power in the artificially created Apple-Labeled Computer Hardware Systems submarket by controlling prices and/or destroying competition in the Mac OS Capable Computer Hardware Systems market.

100.     PSYSTAR, on information and belief, alleges that APPLE likewise misuses its copyrights with respect to prohibiting Mac OS Capable Computer Hardware System manufacturers from manufacturing and selling computer hardware systems that would allow for installation, use, and running of the Mac OS.

101.     PSYSTAR, on information and belief, alleges that unless restrained by the Court, APPLE will continue to attempt to maintain its monopoly power in the Apple-Labeled Computer Hardware Systems submarket to the exclusion of other manufactures including manufacturers of Mac OS Capable Computer Hardware Systems by and through anticompetitive and unreasonably exclusionary conduct including but not limited to those allegations set forth in the First Claim for Relief above as well as the misuse of its copyrights.

102.     PSYSTAR, on information and belief, alleges that if left unrestrained, APPLE is likely to succeed in its attempts to control prices and/or destroy competition in the Mac OS Capable Computer Hardware Systems market thereby maintaining its monopoly in the Apple-Labeled Computer Hardware Systems submarket.

103.     PSYSTAR, on information and belief, alleges that PSYSTAR, a manufacturer of a Mac OS Capable Computer Hardware System, has been and will continue to be harmed by APPLE's anticompetitive and unreasonably exclusionary conduct.

104.     PSYSTAR, on information and belief, alleges that APPLE's intent to illegally maintain monopoly power is in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

105.     PSYSTAR, as a result of APPLE's illicit monopoly maintenance, has been damaged and requests compensatory relief in addition to a declaration as to APPLE's illicit behavior.

### Third Claim for Relief

### (Exclusive Dealing in Violation of Section 3 of the Clayton Act)

### (15 U.S.C. § 14)

106.     PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-105 of this Counterclaim as if more fully set forth herein.

107.    PSYSTAR, on information and belief, alleges that APPLE requires of its end users of the Mac OS that they deal exclusively with APPLE through the purchase and use of Apple-Labeled Computer Hardware Systems to the exclusion of all other Mac OS Capable Computer Hardware Systems in the marketplace.

108.    PSYSTAR, on information and belief, alleges that the Mac OS and Mac OS Capable Computer Hardware Systems including Apple-Labeled Computer Hardware Systems each constitute a good, ware, merchandise, or other commodity involved in domestic, interstate commerce.

109.    PSYSTAR, on information and belief, alleges that through APPLE's requirement that end users utilize only Apple-Labeled Computer Hardware Systems to the exclusion of all other Mac OS Capable Computer Hardware Systems in the marketplace—including but not limited to APPLE's EULA and misuse of copyrights—APPLE has substantially lessened competition in the Mac OS Capable Computer Hardware Systems marketplace to the point of near elimination.

110.    PSYSTAR, on information and belief, alleges that through APPLE's requirement that end users utilize only Apple-Labeled Computer Hardware Systems to the exclusion of all other Mac OS Capable Computer Hardware Systems, APPLE's behavior will tend to maintain a monopoly in interstate commerce.

111.    PSYSTAR, on information and belief, alleges that PSYSTAR, a manufacturer of a competing Mac OS Capable Computer Hardware System, has been and will continue to be harmed by APPLE's anticompetitive and unreasonably exclusionary conduct.

112.    PSYSTAR, on information and belief, alleges that APPLE's intent to exclude other manufacturers in the Mac OS Capable Computer Hardware Systems marketplace with respect to the Mac OS constitutes a violation of Section 3 of the Clayton Act, 15 U.S.C. § 14.

113.    PSYSTAR, as a result of APPLE's illicit exclusionary behavior, has been damaged and requests compensatory relief in addition to a declaration as to APPLE's illicit behavior.

**Fourth Claim for Relief**

**(Violations of the California Cartwright Act)**

**(California Business and Professions Code § 16700 *et seq.*)**

114.     PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-113 of this Counterclaim.

115.     PSYSTAR, on information and belief, alleges that through the conduct alleged in the First, Second, and Third Claims for Relief, including but not limited to APPLE's tying of the Mac OS to Apple-Labeled Computer Hardware Systems, APPLE's attempts to control prices and/or destroy competition in the Mac OS Capable Computer Hardware Systems market vis-à-vis its monopoly maintenance in the Apple-Labeled Computer Hardware Systems submarket, APPLE's requirement of its customers not to use the goods of a competitor, and the misuse of its intellectual property including its copyrights, APPLE has violated the California Cartwright Act, California Business and Professional Code § 16700 *et seq.*

116.     PSYSTAR, on information and belief, alleges that the conduct alleged in the First, Second, and Third Claims for Relief, including but not limited to APPLE's tying of the Mac OS to Apple-Labeled Computer Hardware Systems, APPLE's attempts to destroy competition in the Mac OS Capable Computer Hardware Systems market vis-à-vis its monopoly maintenance in the artificially created Apple-Labeled Computer Hardware Systems submarket, APPLE's requirement of its customers not to use the goods of a competitor, and the misuse of its intellectual property including its copyrights, is forbidden, unlawful, and against public policy.

117.     APPLE's violations of the Cartwright Act have injured PSYSTAR in its business and/or property by suppressing competition in the Mac OS Capable Computer Hardware Systems market thus constituting a direct antitrust injury to PSYSTAR.

118.     PSYSTAR, on information and belief, alleges that as a result of APPLE's illicit behavior, PSYSTAR has been damaged and requests compensatory relief in addition to a declaration as to APPLE's illicit behavior.

1

**Fifth Claim for Relief**

2

**(Violation of State Unfair Competition Law)**

3

**(California Business & Professions Code § 17200 *et seq.*)**

4

5    119.    PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-118 of

6    this Counterclaim.

7    120.    PSYSTAR, on information and belief, alleges that the foregoing conduct amounts to an

8    unlawful and/or unfair business practice within the meaning of the California Unfair Competition

9    Law, California Business & Professional Code § 17200 *et seq.*

10    121.    PSYSTAR, on information and belief, alleges that APPLE's violations of California's

11    Unfair Competition Law have injured PSYSTAR and its business and/or property by suppressing

12    competition in the Mac OS Capable Computer Hardware Systems market thus constituting a direct

13    injury to PSYSTAR.

14    122.    PSYSTAR, as a result of APPLE's illicit behavior, has been damaged and requests

15    injunctive relief and attorneys' fees and costs in addition to a declaration as to APPLE's illicit

16    behavior.

17

18

**Sixth Claim for Relief**

19

**(Violation of the Common Law of Unfair Competition)**

20

21    123.    PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-122 of

22    this Counterclaim.

23    124.    PSYSTAR, on information and belief, alleges that the foregoing conduct amounts to an

24    unlawful and/or unfair business practice within the meaning of the common law of unfair

25    competition.

26    125.    PSYSTAR, on information and belief, alleges that APPLE's violations of the common law

27    of unfair competition for the state of California have injured PSYSTAR and its business and/or

28

1  property by suppressing competition in the Mac OS Capable Computer Hardware Systems market

2  thus constituting a direct injury to PSYSTAR.

3  126.    PSYSTAR, as a result of APPLE's illicit behavior, has been damaged and requests

4  compensatory and punitive relief as otherwise governed by the California Civil Code in addition to

5  a declaration as to APPLE's illicit behavior.

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

## Prayer for Relief

**WHEREFORE, PSYSTAR PRAYS FOR RELIEF AS FOLLOWS:**

1.      Entering judgment for PSYSTAR against APPLE on all counts;

2.      Award PSYSTAR compensatory and statutory money damages, including treble damages and punitive damages, as appropriate;

3.      An award of prejudgment interest, as appropriate;

4.      Declare APPLE's actions to be in violation of state and federal antitrust laws, state law of unfair competition and the common law, and enjoin APPLE from carrying on such conduct;

5.      Enter such other preliminary and permanent injunctive relief as is necessary and appropriate to restore competitive conditions in the markets affected by APPLE's unlawful conduct;

6.      That the Court enter such additional relief as it may find just and proper; and

7.      That PSYSTAR recover the costs of this action.


Dated:  August 28, 2008                                CARR & FERRELL *LLP*


By: /s/ Colby B. Springer
_____
ROBERT J. YORIO
COLBY B. SPRINGER
CHRISTINE S. WATSON

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION

Answer and Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

**DEMAND FOR JURY TRIAL**

Defendant and Counterclaimant PSYSTAR hereby demands a jury trial of all issues in the above-captioned action that are triable to a jury.


Dated:  August 28, 2008                              CARR & FERRELL LLP


                                        By: /s/ Colby B. Springer
                                            ROBERT J. YORIO
                                            COLBY B. SPRINGER
                                            CHRISTINE S. WATSON

                                            Attorneys for Defendant/Counterclaimant
                                            PSYSTAR CORPORATION