# EXHIBIT E

Ben Edelman's report complained of certain practices, real or perceived, with our software. We do not believe he has raised any privacy issues or identified any practices that are not consistent with our own or generally accepted privacy policies. Our work with industry privacy experts and our discussions with them in the wake of the Edelman article confirm that view.

Before addressing the claims in the article, we wish to reiterate that Coupons, Inc. and its software have never, and will never, engage in any practices that can remotely be classified as adware, trackware, spyware, or malicious activity. It remains that case that our software and services can only be installed and their actions can only be initiated by user action and desire. If you ever have any questions about any of our programs or services, please contact us and we will be happy to answer.

Specifically, then, with respect to each of Edelman's points:

- Edelman claims our device IDs as they are stored in the registry and file system have deceptive names intended to prevent users from finding and deleting them, and potentially causing users to damage their registries.
  - o The IDs he is referring to are best thought of as license keys entitling a given computer to interact with our coupon printing system. They are intended to uniquely identify a computer or device. **They do not identify an individual nor do they collect or store any personally identifiable information.** It is critical that these license keys survive the removal of the Coupon Printer software, as they, working in conjunction with other methods, allow us to limit the number of times a specific coupon can be printed on any given computer, regardless of whether the software has been removed and reinstalled. This limit on distribution is critical to controlling the financial liability of our clients, and is well understood by the consumers who print coupons. Therefore the keys are designed to be obscure, not deceptive. The keys also contain nothing more than an arbitrary alphanumeric string, and their presence on the computer has no effect whatsoever other than being available to be read by our software. Nevertheless, we agree that since deception is not our intent, we should better disclose the existence and behavior of such keys, and we have already modified our EULA to notify the consumer. We also understand the potential, however remote, that someone might confuse a key with one intended for another purpose, and have therefore committed to using a naming convention that avoids such problems in our next release. We are working with TRUSTe to ensure that such names meet that goal.

- the uninstaller doesn't remove the device IDs
  - o as noted above, this is intentional and prevents those who intend to defraud our clients by printing more coupons than they are entitled to from doing so with ease. As noted above, we have modified our EULA to explicitly note that the inert, anonymous license keys survive an uninstall.

- printing the device ID on each coupon
  - o Edelman appears to be conflating a device identifier with a "User" ID, and in fact starts to use the term "user ID" in the article. The license keys do not and cannot identify an individual. The fact that the device identifier is printed on the coupon does not convey any information about the individual using the coupon. An individual consumer may print coupons from many different computers at home and at work, and each one would carry a different number. Conversely, many different individuals could use a common computer, and each coupon printed from that computer would show the same number. Finally, while coupons are not supposed to be transferable, in practice people regularly hand coupons that they are not going to use to others who will. The use of the number on the coupon, along with other information, allows us to uniquely identify **the coupon**, not a person. Any scheme that attempted to store and track behavioral information based on the number printed on the physical coupon handed to a cashier in the store would be inaccurate, if not useless.

- allowing third parties to retrieve the device ID

- o We do consider the ability of a third party to obtain the anonymous license key a "hole," and we have already fixed it in a release scheduled for the week of September 10th. However, it is in no way, as Edelman claims, a violation of our privacy policy. First, it is hard to imagine how a third party's unauthorized use of our software--a sort of trespass if you will—constitutes our violation of our own privacy policy. It is even less clear when you consider that the license key, by itself, contains no personal information whatsoever. If a third party were to capture that string and associate it with personal information it has obtained through other means, it may violate that third party's privacy policy, but our policies are not at issue at that point. Also, it is important to note that the method he describes requires first-party access to the user via a web page that can run Javascript. In other words, it requires even greater access than is required to track that user with a cookie. While we understand his point that our license key be available in situations where a user has blocked cookies , the practicality of doing so given the disproportionate number of users who allow cookies versus those who have our software is suspect. Again, our privacy policy is not an issue here, but we agree that any potential unauthorized use should be thwarted, and we have already taken steps to do so.

- you can use our old Veri-FI system to figure out what coupons a given ID has printed.
  - o as discussed above in the context of using the license key printed on a coupon to attempt to understand an individual's behavior, even if a 'bad actor' were to have tried to create such a database, it would be flawed at best. Nevertheless, we removed any ability to use this method from the Veri-FI website even before the article was published. The new site only allows verification of our new coupon style, which uses encrypted and randomized identifiers to authenticate a given coupon print, and can in no way be used to generate a picture of the print activity of any computer.

# EXHIBIT F





COUPONS · INC          Home | ☑ Publisher Network | ☑ Privacy Policy | ☑ Contact Us

| OUR COMPANY | ⤨ | SERVICES | ⤨ | CLIENTS | ⤨ |

Our Company » Our Technology

# OUR TECHNOLOGY

### Coupons, Inc. leads the industry in placing a unique, trackable certificate into the stream of commerce.

Our secure technology and business practices give our clients tight control over the number of coupons distributed, thereby limiting redemption liability and helping regulate budgets. Our client-side Coupon Printer completes a closed system from our servers to the consumer's printer, ensuring both security and a coupon with properly rendered barcodes that scan at retail every time.

We've built around our core coupon technology a suite of products and services to provide our clients with a complete solution to coupon-based promotions and consumer services.

### Distribution Control

Our systems control the total number of coupons distributed by enforcing print limits at three levels:

- Device-based print limits
- PIN-based print limits
- Campaign-based print limits

These limits are enforced across our entire network, including all Digital FSI™ properties.

### The Coupon Printer

When consumers first print a coupon from our systems, the Coupon Printer is installed on their computer. It is an industry-standard browser plug-in that enables the security features required to print real coupons. Unlike cookie-based controls, removing and reinstalling the Coupon Printer does not affect its security settings. A coupon never appears on the consumer's screen but prints directly to the printer.

### Each Coupon is Unique

Each coupon carries a unique ID that is encrypted in a 2-D PDF417 barcode. That means each coupon can be traced from print to redemption by its originating device. All Coupons, Inc. coupons can be authenticated using this unique code, and it can be used to detect counterfeit or altered coupons.

back to top

**Our Company**
- About Coupons, Inc.
- Management Team
- « Our Technology
- Press Releases
- In the News
- Careers

Coupons, Inc.                                    Publisher Network | Client Login | Privacy Policy | Contact Us
www.couponsinc.com                                                          ©2007 Coupons, Inc.

# EXHIBIT G

John L. Slafsky, State Bar No. 195513
Joseph G. Adams, State Bar No. 209668
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Attorneys for Plaintiff Coupons, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COUPONS, INC., a California corporation, | Civil Action No. C03 03576 CW |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT, VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, FALSE DESIGNATION OF ORIGIN, RACKETEERING, AND RELATED STATE LAW CLAIMS** |
| v. | |
| ANDREA HEINTZELMAN, an individual, MIDWEST WHOLESALE, a Michigan partnership, ANTHONY "TONY" LELAND, an individual; DOES 1-10, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff Coupons, Inc. ("Plaintiff") alleges as follows:

## PARTIES

1.      Plaintiff is a California corporation with its principal place of business in Belmont, California.

2.      Plaintiff is informed and believes, and therefore alleges, that defendant Andrea Heintzelman ("Heintzelman") is an individual residing in Milford, Michigan.

3.      Plaintiff is informed and believes, and therefore alleges, that defendant Midwest Wholesale ("Midwest Wholesale") is a Michigan partnership with its principal place of business located in Milford, Michigan.  Plaintiff is informed and believes, and therefore alleges, that defendant Heintzelman is a principal or partner of defendant Midwest Wholesale.

4.      Plaintiff is informed and believes, and therefore alleges, that defendant Anthony "Tony" Leland ("Leland") is an individual residing in New Hudson, Michigan.

5.      The true names and capacities of defendants named as Does 1-10 are not presently known to Plaintiff, which therefore sues these defendants by their fictitious names. Plaintiff will seek to amend this Complaint and include these Doe defendants' true names when they are ascertained.  Plaintiff is informed and believes, and therefore alleges, that each of these fictitiously named defendants is responsible in some manner for the conduct alleged in this Complaint.

## JURISDICTION AND VENUE

6.      This action for copyright infringement, violations of the Digital Millennium Copyright Act, false designation of origin, racketeering, and related causes of action arises under 17 U.S.C. § 501, 17 U.S.C. § 1202, 15 U.S.C. § 1125(a), 18 U.S.C. § 1961, California statutes, and the common law of California.

7.      This Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) for claims arising under the Copyright Act, the Digital Millennium Copyright Act, the Lanham Act, and the Racketeer Influenced and Corrupt Organizations Act, and under 28 U.S.C. 1338(b) for the related state-law claims based on unfair competition.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 for all related state-law claims.

8.      This Court has personal jurisdiction over Heintzelman, Midwest Wholesale, Leland, and the Doe defendants (collectively, "Defendants") by virtue of Defendants' transacting and doing business in the forum and/or their committing a tort in or directed at the forum.

9.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND FACTS

10.      Plaintiff is the leading provider of technology for enabling businesses to deliver on-line, printable coupons to consumers.

11.      Plaintiff's clients include many of the country's most prominent consumer product manufacturers, advertising agencies, retailers, promotional marketing companies, and

1   Internet portals.  Using Plaintiff's technology, Plaintiff's clients are able to deliver on-line

2   coupons directly to their customers from corporate web sites, via on-line banner ads, and through

3   targeted e-mails.

4   **Plaintiff's Technology and Security Measures**

5         12.     In order to supply secure, printable coupons to consumers over the Internet,

6   Plaintiff maintains a distribution system using proprietary encryption, authentication, and private

7   and public key technology.

8         13.     Internet consumers are able to access on-line coupons created by Plaintiff by

9   clicking on a web site, Internet banner advertisement, or targeted e-mail message originating

10  from one of Plaintiff's clients.  When the consumer clicks on one of these Internet links, a file

11  created by Plaintiff's software is automatically sent via the Internet from Plaintiff's computer

12  server directly to the consumer's personal computer.  After the consumer receives the coupon

13  file and chooses to print the coupon, a data stream containing the graphics and content of the

14  coupon is sent directly to the consumer's printer.

15        14.     The coupon file received by the consumer contains built-in security measures to

16  prevent the consumer from copying the file.  For instance, the coupon file does not permit the

17  consumer to display the coupon on a monitor screen.  The coupon file also limits the number of

18  times that a coupon can be printed and provides for built-in expiration.  The coupon file itself is

19  protected by Plaintiff's proprietary encryption technology.

20        15.     The coupon printed by the consumer features a variety of security measures.

21  Each coupon contains two types of bar codes: a pair of traditional bar codes to be scanned by the

22  store where the coupon is redeemed, as well as a more sophisticated "two-dimensional"

23  encrypted bar code that is readable only by Plaintiff.  The "two-dimensional" bar code contains a

24  variety of identifying information about the coupon, including the details of the specific

25  promotional offer, information about the specific coupon and device that printed the coupon, and

26  a time and date stamp.  In addition, the coupon contains visible "microtext" with a time and date

27  stamp, a unique identifying number for the coupon, and information regarding the device and

28  computer operating system used by the consumer.

16.     Many of the printed coupons based on Plaintiff's technology display the conspicuous slogan "Powered by Coupons, Inc."

17.     Many, if not all, of the printed coupons also contain prominent notices informing consumers that they may not transfer or copy the coupons without permission, such as "*Void if altered, transferred, sold, reproduced, or exchanged*" and "*Unauthorized reproduction prohibited.*"

**Defendants' Unauthorized Distribution and Sale of Counterfeit Coupons**

18.     Plaintiff reviews on-line auction sites such as eBay in an effort to monitor improper use of its on-line coupons and to protect against unauthorized sales and fraud.

19.     In connection with this monitoring program, Plaintiff's employees reviewed items for sale on eBay and recognized that third parties were selling coupons similar or identical to those created and distributed by Plaintiff.  One of Plaintiff's employees purchased a number of these coupons from the persons selling such coupons on eBay.

20.     After receiving and analyzing the coupon files sold on eBay, Plaintiff confirmed that they were illicit, counterfeit copies of its legitimate coupons.  Plaintiff also noticed that someone had modified coupons by deleting or altering the visible "microtext" that contains identifying information about the coupon and by tampering with the "two-dimensional" encrypted bar codes.

21.     One of the individuals who sold counterfeit coupons is a person with the eBay User ID of "lelandsbarn," who uses the e-mail address "lelandsbarn@aol.com," and who signs e-mails with the name "Tony."

22.     On June 27, 2003, Plaintiff sent an "Electronic Notice of Infringement" to eBay, notifying eBay of the fraudulent coupons sold by "lelandsbarn," requesting that eBay remove access to the counterfeit coupon sales, and asking that eBay provide its contact information for the person operating these auctions.

23.     On June 30, 2003, eBay, consistent with its rules and regulations, deleted these auctions from its system and provided to Plaintiff the contact information submitted by the person using the eBay User ID "lelandsbarn."  According to eBay, this individual identified

1   himself as Tony Leland, with an e-mail address of "lelandsbarn@aol.com," a physical address of

2   148 Kensington S., New Hudson, MI 48165, and a phone number of (248) 685-1456.

3        24.     Using the eBay system, Plaintiff also delivered a message to the person operating

4   the "lelandsbarn" account.  The message reads, in pertinent part: "*Please be advised that*

5   *Coupons, Inc. in conjunction with its clients prosecutes any duplication/distribution of file based*

6   *coupons*," and "*Duplication, alteration or distribution of coupons is a federal crime.*"

7        25.     Plaintiff's employee subsequently received a series of unsolicited e-mail

8   messages directly from "lelandsbarn@aol.com" offering to sell numerous counterfeit coupons.

9   Plaintiff's employee purchased several of these counterfeit coupons using the PayPal online

10   payment service.

11        26.     Documents related to the relevant e-mail addresses and electronic fund transfers

12   make it crystal clear that defendants Heintzelman and Midwest Wholesale are responsible for

13   selling illicit copies of Plaintiff's printable coupons.

14        27.     Based upon this information, Plaintiff is informed and believes, and therefore

15   alleges, that all Defendants are manufacturing, selling and distributing counterfeit copies of

16   Plaintiff's coupons.

17   **Defendants' Copying and Alteration of Coupons Created By Plaintiff**

18        28.     Plaintiff is informed and believes, and therefore alleges, that Defendants have

19   created counterfeit coupons by copying legitimate on-line, printable coupons created and

20   distributed by Plaintiff.

21        29.     Plaintiff is informed and believes, and therefore alleges, that Defendants have

22   created counterfeit coupons by overcoming, hacking, or tampering with the technological anti-

23   copying measures put in place by Plaintiff.

24        30.     Plaintiff is informed and believes, and therefore alleges, that Defendants

25   intentionally have altered some or all of the copied coupons by deleting or modifying the visible

26   "microtext" that contains identifying information about the coupon.  Plaintiff is informed and

27   believes, and therefore alleges, that Defendants delete or modify this "microtext" in an effort to

28   facilitate or conceal their infringing activities.

31.    Plaintiff is informed and believes, and therefore alleges, that Defendants intentionally have altered some or all of the copied coupons by modifying or defacing the "two-dimensional" encrypted bar code displayed on each of the printed coupons based on Plaintiff's technology.  This bar code contains, among other things, identifying information about the source of the coupon and the specific promotional offer, as well as all of the "microtext" information.  Plaintiff is informed and believes, and therefore alleges, that Defendants deface this bar code in an effort to facilitate or conceal their infringing activities.

## FIRST CAUSE OF ACTION

(Infringement of Copyright; 17 U.S.C. § 501)

32.    Plaintiff realleges and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

33.    Plaintiff created, and owns copyrights related to, the on-line coupons that it has distributed.

34.    Plaintiff has secured copyright registrations of its coupons from the U.S. Copyright Office.

35.    Defendants have infringed Plaintiff's copyrights by reproducing and distributing copies of these coupons in violation of 17 U.S.C. § 106.

36.    Defendants have infringed Plaintiff's copyrights by preparing derivative works of the coupons in violation of 17 U.S.C. § 106.

37.    Plaintiff is entitled to an injunction, statutory damages, actual damages, and an award of attorneys' fees and other costs as provided under 17 U.S.C. § 504.

## SECOND CAUSE OF ACTION

(Digital Millennium Copyright Act, 17 U.S.C. Section 1202))

38.    Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as though fully set forth herein.

39.    By the acts described above, Defendants intentionally removed or altered copyright management information (within the meaning of 17 U.S.C. § 1202(c)) contained in

1   coupons created by Plaintiff knowing or having reason to know that it would induce, enable,

2   facilitate, or conceal an infringement of Plaintiff's rights under the Copyright Act.

3         40.    By the acts described above, Defendants distributed coupons created by Plaintiff,

4   or copies thereof, knowing that copyright management information (within the meaning of 17

5   U.S.C. § 1202(c)) had been removed or altered without the authority of the copyright owner or

6   the law knowing or having reason to know that it would induce, enable, facilitate, or conceal an

7   infringement of Plaintiff's rights under the Copyright Act.

8         41.    The conduct described above injured Plaintiff and constitutes a violation of 17

9   U.S.C. § 1202.

10        42.    Plaintiff is entitled to an injunction, statutory damages, actual damages, and an

11   award of attorneys' fees and other costs as provided under 17 U.S.C. § 1203.

12                      **THIRD CAUSE OF ACTION**

13       (Unfair Competition; False Designation of Origin, 15 U.S.C. Section 1125(a))

14         43.    Plaintiff realleges and incorporates by reference paragraphs 1 through 42 as

15   though fully set forth herein.

16         44.    Plaintiff owns the "Coupons, Inc." trade name and trademark and has established

17   rights to this trade name and trademark through continuous and exclusive use in commerce.

18         45.    Defendants' use in commerce of counterfeit coupons prominently displaying the

19   phrase "Powered by Coupons, Inc." as described above is likely to cause, and has actually

20   caused, confusion, mistake or deception as to the origin, sponsorship, or approval of Defendants'

21   products and services, or the affiliation, connection, or association of Defendants with Plaintiff.

22         46.    As the result of such confusion, customers and the public are likely to believe that

23   the counterfeit coupons copied, distributed, and/or sold by Defendants are authorized or

24   associated with Plaintiff, or that Defendants are authorized to distribute coupons bearing the

25   "Coupons, Inc." name.

26         47.    Plaintiff is informed and believes, and therefore alleges, that Defendants' acts

27   have injured or are likely to injure Plaintiff's reputation, business and relations with its clients by

28   causing confusion about Plaintiff's products and services, and a loss of sales to Plaintiff.

48.     Defendants' unauthorized use and alteration of coupons bearing the "Coupons, Inc." name and/or the "Powered by Coupons, Inc." slogan is a deliberate, intentional and willful attempt to confuse and deceive purchasers, to injure the business of Plaintiff, to trade on the business reputation of Plaintiff, and to interfere with the business relationships of Plaintiff.

49.     Defendants' acts described above constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50.     Defendants' acts have greatly and irreparably damaged Plaintiff and will continue to so damage Plaintiff unless restrained by this Court.

51.     Plaintiff is entitled to an injunction under 15 U.S.C. § 1116, as well as to damages, Defendants' profits, and the costs of this action under 15 U.S.C. § 1117.

52.     Defendants' acts have been willful and with direct knowledge of the superior rights of Plaintiff, making this an "exceptional" case justifying an award of treble damages, treble profits, and attorneys' fees against Defendants.

## FOURTH CAUSE OF ACTION

(Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*.)

53.     Plaintiff realleges and incorporates by reference paragraphs 1 through 52 as though fully set forth herein.

54.     By the acts described above, Defendants devised a scheme or artifice to defraud, or obtained property by means of false or fraudulent pretenses or representations.

55.     For the purpose of executing this scheme or artifice, Defendants transmitted or caused to be transmitted writings, signs, and signals by means of wire, radio, or television communication in violation of 18 U.S.C. § 1343.

56.     By the acts described above, Defendants infringed Plaintiff's copyrights willfully for purposes of commercial advantage or private financial gain in violation of 17 U.S.C. § 506 and 18 U.S.C. § 2319.

57.     Defendants' acts constitute a pattern of racketeering activity as set forth at 18 U.S.C. § 1961(1).

58.     Defendants conducted or participated in the conduct of an enterprise engaged in or affecting interstate commerce though a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

59.     Defendants conspired to violate the provisions of 18 U.S.C. § 1962(c) in violation of § 1962(d).

60.     Plaintiff was injured in its business or property by reason of Defendants' violation of 18 U.S.C. § 1962.

61.     Plaintiff is entitled to an injunction, treble damages, and an award of attorneys' fees and other costs as provided under 18 U.S.C. § 1964.

## FIFTH CAUSE OF ACTION

(Unlawful Business Practices, Calif. Bus. & Prof. Code § 17200 *et seq.*)

62.     Plaintiff realleges and incorporates by reference paragraphs 1 through 61 as though fully set forth herein.

63.     By the acts described above, Defendants have engaged in unlawful and unfair business practices and have performed unfair, deceptive and misleading acts that have irreparably injured, and threaten to continue to injure, Plaintiff in its business and property.

64.     As a consequence, Plaintiff is entitled, under Sections 17200 and 17203 of the California Business and Professions Code, to an injunction and restitution as set forth below.

## SIXTH CAUSE OF ACTION

(False and Misleading Statements, Calif. Bus. & Prof. Code § 17500 *et seq.*)

65.     Plaintiff realleges and incorporates by reference paragraphs 1 through 64 as though fully set forth herein.

66.     By the acts described above, Defendants have made and continue to make false and misleading statements in connection with the sales of property and/or services in violation of Sections 17500 and 17505 of the California Business and Professions Code.

67.     These acts have irreparably injured, and are likely to continue to injure, Plaintiff in its business and property and entitle it, under Sections 17500 and 17535 of the California Business and Professions Code, to an injunction and restitution as set forth below.

**SEVENTH CAUSE OF ACTION**

(Conversion/Trespass to Chattels)

68.     Plaintiff realleges and incorporates by reference paragraphs 1 through 67 as though fully set forth herein.

69.     By the acts described above, Defendants intentionally and wrongfully exercised authority or control over the property of Plaintiff.

70.     This wrongful exercise or assumption of authority deprived Plaintiff of its property and is inconsistent with Plaintiff's ownership rights.

71.     Defendants' acts described above constitute the tort of conversion in violation of the common law of California.

72.     In the alternative, Defendants' acts described above constitute the tort of trespass to chattels in violation of the common law of California.

73.     Defendants' acts have greatly and irreparably damaged Plaintiff and will continue to so damage Plaintiff unless enjoined by this Court.  Plaintiff is without an adequate remedy at law and is entitled to injunctive relief in addition to damages, in an amount to be proved at trial.

**EIGHTH CAUSE OF ACTION**

(Common Law Unfair Competition)

74.     Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein.

75.     Defendants' acts described above constitute unfair competition in violation of the common law of the State of California.

76.     Defendants' acts have greatly and irreparably damaged Plaintiff and will continue to so damage Plaintiff unless enjoined by this Court.  Plaintiff is without an adequate remedy at law and is entitled to injunctive relief in addition to damages, in an amount to be proved at trial.

**NINTH CAUSE OF ACTION**

(Common Law Trademark Infringement)

77.     Plaintiff realleges and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

1    78.    Defendants' acts described above constitute trademark infringement in violation

2  of the common law of the State of California.

3    79.    Defendants' acts have greatly and irreparably damaged Plaintiff and will continue

4  to so damage Plaintiff unless enjoined by this Court.  Plaintiff is without an adequate remedy at

5  law and is entitled to injunctive relief in addition to damages, in an amount to be proved at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that:

1.    The Court find that Defendants willfully infringed Plaintiff's copyrights and order Defendants to pay to Plaintiff the maximum amount of statutory damages available under 17 U.S.C. § 504(c) in an amount of $150,000 per infringement of each work;

2.    The Court order Defendants to pay to Plaintiff the maximum amount of statutory damages available under 17 U.S.C. § 1203(c)(B) in an amount of $25,000 per violation of 17 U.S.C. § 1202;

3.    That the Court order that, during the pendency of this action, Defendants, and all of their agents, partners, servants, employees, and all others in active concert or participation with Defendants be enjoined and restrained from destroying, modifying, defacing, or concealing any evidence likely to be relevant in this case;

4.    That the Court order that Defendants, and all of their agents, partners, servants, employees, and all others in active concert or participation with Defendants be enjoined and restrained during the pendency of this action, and permanently thereafter, from copying, distributing, altering, modifying, offering for sale, or selling coupons, including but not limited to electronic files or images of coupons, created or distributed by Plaintiff;

5.    That the Court order that Defendants, and all of their agents, partners, servants, employees, and all others in active concert or participation with Defendants be enjoined and restrained during the pendency of this action, and permanently thereafter, from using Plaintiff's trade name and trademark "Coupons, Inc." in commerce in connection with any products or services;

6.      That the Court order Defendants to deliver to Plaintiff all coupons (including but not limited to electronic files or images of coupons) in the possession of Defendants that are: (a) created or distributed by Plaintiff; (b) copies or counterfeits of coupons distributed by Plaintiff; or (c) bearing or displaying the "Coupons, Inc." name in any way.

7.      That the Court order Defendants to deliver to Plaintiff all documents, files, lists, correspondence reflecting the identities of, and contact information for, the persons to whom Defendants sold coupons that were: (a) created or distributed by Plaintiff; (b) copies or counterfeits of coupons distributed by Plaintiff; or (c) bore or displayed the "Coupons, Inc." name in any way.

8.      That the Court order Defendants to file with the Court and serve on Plaintiff an affidavit setting forth in detail the manner and form in which they have complied with the terms of the injunction;

9.      That the Court order Defendants to account for and pay to Plaintiff treble the amount of all profits derived by Defendants;

10.     That the Court order Defendants to pay to Plaintiff treble the amount of all damages incurred by Plaintiff by reason of Defendants' acts;

11.     That the Court order Defendants to provide restitution for their unlawful business practices and false and misleading statements, measured by their advertising expenditures and/or profits;

12.     That the Court order Defendants to pay to Plaintiff the costs of this action, together with reasonable attorneys' fees and disbursements; and

13.     That the Court grant such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands trial by jury of all issues triable by a jury.

Respectfully submitted,

Dated:  August 26, 2003

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By:___/s/ John L. Slafsky
_____
John L. Slafsky

Attorneys for Plaintiff Coupons, Inc.

# EXHIBIT H



© 2007 John A Stottlemire

## John Stottlemire, pro se

ARCHIVES BY SUBJECT

Coupons, Inc (7) [RSS]
Coupons, Inc v. Does 1-12 (9) [RSS]
Coupons, Inc v. Stottlemire (5) [RSS]
Uninstalling Coupon Printer (5) [RSS]

CALENDAR

<< July 2007 >>

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

NAVIGATION

Home
The Coupon Queen
About Me

RECENT ENTRIES

TRUSTe mandates Coupons, Inc comply with its TRUSTe agreement

Uninstall Version 4.0.0.2 (Internet Explorer version) Version 4.0.0.6 (Firefox version)

Uninstall Version 4.0.0.2 (Internet Explorer version) Version 4.0.0.4 (Firefox version)

Uninstalling Version 4.0.0.2 (Internet Explorer version) or 4.0.0.3 (Firefox version)

Misrepresentation.

RECENT COMMENTS

No recent Comments

RSS

RSS FEED

SEARCH

Search

SUBSCRIBE

Enter your email address to subscribe to this blog.

Subscribe

TAGS

### How does Coupons, Inc's coupon printer software work?

Posted At : July 15, 2007 1:10 PM | Posted By : John Stottlemire
Related Categories: Coupons, Inc

Coupons, Inc uses a technology which will retain a unique ID it has assigned to a computer even after that computer has removed its software from the computer. At first glance, I assumed this was done using a simple cookie or other form of identification of the computer such as IP number or even the MAC address assigned to the Ethernet card. Deleting the IP number, removing cookies and even changing the MAC address had no impact on the retention of the unique ID. My curiosity getting the best of me, I undertook an analysis of the coupon printer software to see what technology Coupons, Inc may have invented which thwarted all efforts to remove the unique ID.

On a computer I use strictly for testing, I reformatted and reinstalled my Windows XP operating system before beginning my analysis of the coupon printer offered by Coupons, Inc on its website at www.coupons.com. Then, through the use of tools, I compared changes to my Windows registry and hard drive so that I could determine exactly what changes the coupon printer made to my system. I further analyzed the html pages served by the coupons.com website and came to the following conclusions:

Note: this analysis was made using Windows Internet Explorer Version 7.0 and may not hold true with other versions of Internet Explorer or with other web browsers. The coupon printer I installed, version 3.3.0.2, was installed through the use of a webpage with embedded cab file containing an ActiveX control, not the standard executable file that is downloaded to a computer and then launched. Using an embedded cab file limits Coupons, Inc's ability to add an "End User Licensing Agreement" and they must include that "Licensing Agreement" as a link on the page they offer the download from. The page I downloaded the cab file from contained no links to an underlying "End User Licensing Agreement" nor was such a file included in their cab file. Obviously a mistake on their part. The cab file was located at ftp://ftp.coupons.com/r3302/cpbrkpie.cab and contained two files, "cpbrkpie.inf", an instruction set telling windows how to install the file; and "cpbrkpie.ocx", the ActiveX control.

Installation of the cab file causes:

- cpbrkpie.inf to be copied to the "C:\windows\downloaded program files" directory
- cpbrkpie.ocx to be copied to the "C:\windows" directory
- "{9522B3FB-7A2B-4646-8AF6-36E7F593073C}" to be added to the windows registry at HKCR\CLSID
- "{7DD95802-9882-11CF-9FA9-00AA006C42C4}" to be added to the windows registry at HKLM\Software\Classes\CLSID\{87255C51-CD7D-4506-B9AD-97606DAF53F3}\Implemented Categories
- "{7DD95801-9882-11CF-9FA9-00AA006C45C4}" to be added to the windows registry at HKLM\Software\Classes\CLSID\{87255C51-CD7D-4506-B9AD-97606DAF53F3}\Implemented Categories

Installation causes no other changes to the computer at this time and when uninstalled, these entries are removed.

Coupons, Inc's download page contains a link which states "Installed the Coupon Printer? Get Coupons" you must click to print coupons you had previously selected as they apparently have no way to tell if you've installed the software or not. Clicking that link causes your web browser to go through a number of pages without requiring user input and eventually lands on a page that states it is sending coupons to your printer. Within a matter of minutes, the coupons you requested are now sitting on your printer waiting for you to cut them out and of course, take them to the store and enjoy your savings.

Analysis of the html code of the web pages which the web browser was automatically sent through shows that the ActiveX control was launched and queried to determine if your computer currently has an assigned user ID. The html code uses java script to invoke a procedure within the ActiveX called "GetUserID()". Further analysis of the html code reveals the GetUserID() function can either "timeout" in the event no UserID is found or return the UserID. The html code/java script has the timeout set to two seconds and I assume, if the UserID is not returned within that time period, the Coupons, Inc servers assume the computer has not yet been assigned a UserID.

Now, its time to compare my hard drive pre and post printing of the coupons.

Changes to the file structure of my computer:

- "uccspecb.sys" was created in the "C:\windows" directory with "hidden" attribute.
- "WindowsShellOld.Manifest" was created in the "C:\windows" directory with the "hidden" attribute.

No changes, to include temporary cache files, were created other than those stated above.

Changes to the Windows registry of my computer:

- "UccSpecB" was created at "HKLM\Software\Microsoft\Windows\CurrentVersion"
- "URLDecoding" was created at "HKLM\Software\Microsoft\Windows\CurrentVersion\Internet Settings"
- "UccSpecB" was created at "HKCU\Software\Microsoft\Windows\CurrentVersion"
- "Presentation Style" was created at HKCU\Software\Microsoft\Windows\Controls Folder"
- "EnableAutoTrayHistory" was created at HKCU\Software\Microsoft\Windows\Explorer"

No changes were made to the Windows registry other than those stated above. (the contents of uccspecb.sys file and uccspecb registry keys contain a hexadecimal number containing the exact same number sent to Coupons, Inc's web server as the "UserID" and is printed on every coupon printed from Coupons, Inc's web site).

As Coupons, Inc's coupon printer software is not installed with the normal "exe" installable file when uninstall is required it cannot be done with the "Add/Remove Programs" function in the Control Panel of Windows. Uninstalling this software on Windows XP using Internet Explorer 7.0 requires launching of the "Internet Options" function in the Control Panel and then clicking on the "Manage add-ons" button on the "Programs" tab. On the "Manage add-ons" page, you must then select "Downloaded ActiveX Controls (32-bit)" from the "Show" dropdown list. Click "cpbrkpie" and then click "Delete" at the bottom of the screen. Windows will then remove the files and registry keys that were added to your system when you initially installed the coupon printer, however, it does not remove the files and registry keys added to the computer "post" printing of a coupon.

Uninstalling and then reinstalling the coupon printer show the UserID survives the uninstall process. Uninstalling, removing the files and registry keys which were not removed by the uninstall process (by simply using the [delete] key on the keyboard) and then reinstalling results in Coupons, Inc's website assigning a new "UserID" to the computer.

My conclusion:

Through the use of hiding files and registry keys on a computer, in areas normally reserved for the Windows operating system and naming these files and registry keys very closely to files and registry keys Windows requires to operate, Coupons, Inc attempts to control access to coupons it offers to the public. A special "password buster", "DVD Decrypter", "Key Generator", or software designed to block access to the hard drive or windows registry is not required to obscure your identity from Coupons, Inc. The only tool required is the delete button on your keyboard (or in the alternative, the simple windows command "erase") and knowledge of where these unprotected files lie.

Coupons, Inc has recently claimed that the "ability to control electronic reproduction of unique coupons is key to [our] success" and has, on more than one attempt, chilled the information I now make available in this report. (I am now in litigation with Coupons, Inc for posting this information on another website). Their attempt to style their attempts to chill as a DMCA claim requires that the judicial system of the United States make it illegal to delete files from your own computer and for the judicial system to further conclude that the act of "hiding files and registry keys" on a computer constitutes a "technological measure" as per the DMCA.



💬 Comments (0)  |  ✉ Send  |  📰 del.icio.us  |  🐷 Digg It!  |  📇 Linking Blogs  |  2 Views

Comments

There are no comments for this entry.

[Add Comment]

BlogCFC was created by Raymond Camden. This blog is running version 5.8.001.        Total Pageviews 3151      Total Pageviews from IP's belonging to Coupons, Inc 51