Neil A. Goteiner (State Bar No. 083524)
    ngoteiner@fbm.com
Dennis M. Cusack (State Bar No. 124988)
    dcusack@fbm.com
Carly O. Alameda (State Bar No. 244424)
    calameda@fbm.com
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

Attorneys for Plaintiff
COUPONS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| COUPONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JOHN STOTTLEMIRE, <br><br> Defendant. | Case No. 5:07-CV-03457 HRL <br><br> **COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO SUMMARILY ENFORCE SETTLEMENT AGREEMENT** <br><br> Date:　　　February 24, 2009 <br> Time:　　　10:00 a.m. <br> Courtroom:　2 <br> Judge:　　　Honorable Howard R. Lloyd |

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT  –
USDC/NDC/SJ 5:07-CV-03457 HRL

22675\1847383.3

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.   STATEMENT OF UNDISPUTED AND DISPUTED MATERIAL FACTS................... 3

      A.    Stottlemire Promised Not To Claim Victory ......................... 3

      B.    Confidentiality Was Material To Both Parties........................ 4

      C.    Stottlemire Breached The Confidentiality Provision ................ 7

III.  STOTTLEMIRE'S MOTION FOR SUMMARY JUDGMENT ON THE
      SETTLEMENT AGREEMENT MUST BE DENIED .................................... 10

IV.   COUPONS PROPERLY RESCINDED THE SETTLEMENT AGREEMENT ............. 11

      A.    California State Contract Law Applies ................................ 11

      B.    Legal Standard for Rescission........................................ 11

      C.    Coupons Was Entitled To Rescind The Agreement On The Grounds Of
            Fraud ............................................................... 12

            1.    Stottlemire Promised Confidentiality Without Any Intent To
                  Perform ....................................................... 12

                  a.    Stottlemire promised confidentiality and no claims of
                        victory ................................................. 13

                  b.    Stottlemire's admissions and conduct before and after the
                        settlement confirms that he did not intend to perform. ..... 13

            2.    Stottlemire Knew Coupons' Consent Was Given By Mistake ................ 14

      D.    The Confidentiality Term Was Material, And Stottlemire's Breach Caused
            A Failure Of Consideration .......................................... 16

            1.    The Meaning Of The Agreement, And Its Breach, May Be Inferred
                  From The Parties' Statements and Conduct, As Well As From The
                  Contract Language ............................................. 17

            2.    The Confidentiality Term Is Mutual And Contains No Exceptions ........ 18

            3.    Confidentiality Was Material To Both Parties........................ 20

            4.    Stottlemire Materially Breached ................................. 20

            5.    Coupons Was Prejudiced By Stottlemire's Breach.................... 21

      E.    Coupons Was Entitled To Rescind The Agreement Because Stottlemire
            Repudiated His Obligation Of Confidentiality Under The Agreement. ............ 22

      F.    The Terms Of The Mutual Release Do Not Preclude Rescission......................... 23

      G.    Allowing Coupons To Rescind The Settlement Agreement Is Equitable
            Due To Coupons' Prompt Notice Upon Realizing Stottlemire's Fraudulent
            Intent and Damaging Actions ......................................... 24

V.    THE RESCINDED SETTLEMENT AGREEMENT CANNOT BE SUMMARILY
      ENFORCED............................................................... 24

VI.   CONCLUSION ............................................................ 25

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT  –
USDC/NDC/SJ 5:07-CV-03457 HRL                           - i -                    22675\1847383.3

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Callie v. Near*,
    829 F.2d 888 (9th Cir. 1987) ............................................................. 25

*Citicorp Real Estate v. Smith*,
    155 F.3d 1097 (9th Cir. 1998) ........................................................... 12

*Jeff D. v. Andrus*,
    899 F.2d 753 (9th Cir. 1989) ............................................................. 11

*Peterson v. Highland Music, Inc.*,
    140 F.3d 1313 (9th Cir. 1998) ........................................................... 12

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Associate*,
    809 F.2d 626 (1987) ...................................................................... 10-11

*Thomas v. Department of Housing and Urban Development*,
    124 F.3d 1439 (Fed. Cir. 1997) ...................................................... 16-17

## STATE CASES

*Architects & Contractors Estimating Services, Inc. v. Smith*,
    164 Cal. App. 3d 1001 (1985) ........................................................... 15

*Atlantic Mutual Insurance Co. v. J. Lamb, Inc.*,
    100 Cal. App. 4th 1017 (2002) .......................................................... 22

*Brunzell Construction Co. v. G. J. Weisbrod, Inc.*,
    134 Cal. App. 2d 278 (1955) ............................................................. 15

*Channell v. Anthony*,
    58 Cal. App. 3d 290 (1976) ............................................................... 24

*Crofoot Lumber, Inc. v. Thompson*,
    163 Cal. App. 2d 324 (1958) ............................................................. 16

*Falkowski v. Imation Corp.*,
    132 Cal. App. 4th 499 (2005) ............................................................ 18

*Gorman v. Holte*,
    164 Cal. App. 3d 984 (1985) ............................................................. 12

*Guerrieri v. Severini*,
    51 Cal. 2d 12 (1958) ........................................................................ 22

*Guthrie v. Times-Mirror Co.*,
    51 Cal. App. 3d 879 (1975) ............................................................... 21

*Harris v. Rudin, Richman & Appel*,
    95 Cal. App. 4th 1332 (2002) ......................................................24-25

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- ii -

22675\1847383.3

*Hefferan v. Freebairn*,
    34 Cal. 2d 715 (1950) ..................................................................... 21

*Jeschke v. Lamarr*,
    234 Cal. App. 2d 506 (1965) ........................................................... 22

*Leary v. Baker*,
    119 Cal. App. 2d 106 (1953) ........................................................... 13

*Martinez v. Scott Specialty Gases*,
    83 Cal. App. 4th 1236 (2000) .......................................................... 22

*Matthews v. Atchison, T. & S. F. Railway Co.*,
    54 Cal. App. 2d 549 (1942) ........................................................ 12, 23

*Merced County Mutual Fire Insurance Co. v. California.*,
    233 Cal. App. 3d 765 (1991) ........................................................... 15

*Michel & Pfeffer v. Oceanside Properties, Inc.*,
    61 Cal. App. 3d 433 (1976) ............................................................. 23

*Pennel v. Pond Union Sch. District*,
    29 Cal. App. 3d 832 (1973) .................................................... 16, 20-21

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*,
    107 Cal. App. 4th 516 (2003) .......................................................... 18

*Persson v. Smart Inventions, Inc.*,
    125 Cal. App. 4th 1141 (2005) ........................................................ 23

*Runyan v. Pacific Air Industrial*,
    2 Cal. 3d 304 (1970) ....................................................................... 12

*Sime v. Malouf*,
    95 Cal. App. 2d 82 (1949) ............................................................... 23

*Southern Cal. Edison Co. v. Superior Court*,
    37 Cal. App. 4th 839 (1995) ........................................................... 18

*Thomas v. Hawkins*,
    96 Cal. App. 2d 377 (1950) ............................................................. 12

*Whitney Investment Co. v. Westview Development Co.*,
    273 Cal. App. 2d 594 (1969) ...................................................... 21, 24

*Wilke v. Coinway, Inc.*,
    257 Cal. App. 2d 126 (1967) ........................................................... 13

*Wilson v. Corrugated Kraft Containers*,
    117 Cal. App. 2d 691 (1953) ..................................................... 16-17, 21

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- iii -

-22675\1847383.3

**STATE STATUTES**

California Civil Code
§ 1572 ................................................................................................................ 12
§ 1576 ................................................................................................................ 14
§ 1577 .............................................................................................................. 14-15
§ 1689(b) ........................................................................................................... 11
§ 1689(b)(1) ............................................................................................. 12, 14, 16
§ 1689(b)(2) ....................................................................................................... 20
§ 1689(b)(4) ....................................................................................................... 20
§ 1691 ................................................................................................................ 12

**FEDERAL RULES**

Federal Rules of Civil Procedure
Rule 41(a)(1) ..................................................................................................... 19

**LOCAL RULES**

Local ADR Rules
Rule 5-12(b)(1) .............................................................................................. 3, 13

Local Civil Rules
Rule 79-5 ........................................................................................................... 19

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- iv -

-22675\1847383.3

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant John Stottlemire fraudulently induced Coupons to enter a settlement with a confidentiality provision that he admits was the core consideration, but which he never intended to honor. He represented to Coupons at the ENE, and agreed, that confidentiality meant that the parties would not publicly claim victory over the other. Stottlemire admits he never would have entered the settlement without a confidentiality clause. Coupons also would not have entered into the settlement without confidentiality. But Stottlemire's conduct before and after the settlement confirms conclusively that he intended to – and did – do exactly what he said the parties would not do in breach of the confidentiality term. Despite his promises and representations, Stottlemire *immediately* disclosed three material terms of the settlement: (1) the dismissal with prejudice; (2) that Coupons did not receive any remedy for its claims against Stottlemire; and (3) specifically that Stottlemire was not required to stop publishing his circumvention instructions.

Even if Stottlemire's conduct does not rise to the level of fraud, Stottlemire's own admissions in his moving papers establish alternatively that he knew that Coupons was under a mistake of fact, created by Stottlemire, that the confidentiality term meant that Stottlemire could not publicize the dismissal with prejudice or his characterizations of the settlement agreement. This mistake of fact is a separate ground for rescission.

In addition, Stottlemire's breaches of the confidentiality term after the ENE caused a material failure of the consideration, also a ground for rescission

Skirting these dispositive facts and contract doctrine, Stottlemire's reads the mutual release to permit him to defraud Coupons by promising one thing in the ENE, while intending to breach the agreement. This frivolous argument exposes his intent from the outset to breach the settlement agreement. Relatedly, Stottlemire's misleading characterizations of emails between the parties demonstrate that the Court cannot trust his representations. In any event, if Stottlemire's admissions and misleading assertions do not convince the Court outright to deny Stottlemire's motion, then Rule 56(f) mandates that Coupons be entitled to develop discovery on several material facts, including: (1) Stottlemire's intent to defraud Coupons, (2) his understanding of the core materiality of the confidentiality agreement, (3) the degree to which the

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 1 -

22675\1847383.3

1  confidentiality term was inextricably bound up with the settlement agreement; (4) Stottlemire's

2  statements at the ENE regarding the centrality and purpose of the confidentiality clause; (5) his

3  fabrication of Coupons' mistake in believing that Stottlemire wanted to, and would, adhere to the

4  confidentiality term; (6) precisely what Stottlemire told reporters about the settlement; and (7)

5  generally the credibility of his assertions in his summary judgment papers on which he would

6  have this Court rely.

7       The Court directed specific questions to the parties at the January 27 hearing. For the

8  Court's convenience, we summarize the answers:

9       1. California law controls on enforceability of the settlement (p. 11).

10       2. The parties' motivations or intentions are relevant to the issues of fraud, mistake, and

11  the parties' understanding of the confidentiality term (pp. 12-21).

12       3. We discuss below the admissible evidence of the Agreement, Stottlemire's judicial and

13  contemporary admissions on the issue of the parties' understanding of the scope and materiality

14  of the confidentiality term (pp. 3-10).

15       4. The dismissal with prejudice was a negotiated term of the settlement and not a

16  predictable consequence of the settlement (pp. 18-20).

17       5. While the Court could permit a dismissal to be filed under seal, the question before this

18  Court is that irrespective of the sealing option, the core consideration Coupons received was not

19  to publicize the settlement terms (pp. 19-20).

20       6. While the parties did not discuss sealing the dismissal, that point similarly is not

21  relevant to the materiality of the confidentiality term and Stottlemire's breach (pp. 19-20).

22       7. The breach of the material confidentiality term automatically triggered a rescissory

23  remedy under well-established law regardless of whether the parties explicitly provided for this

24  remedy in the agreement (pp. 16-24).

25       8. We submit evidence through Mr. Boal's declaration of the prejudice caused by and

26  resulting from Stottlemire's breaches, although monetary damages (not necessary for rescission)

27  are not yet quantifiable (pp. 21-22).

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT  –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 2 -

-22675\1847383.3

9. The parties did not specify "non-disparagement" because that was not the parties' over-arching concern with non-disclosure of settlement terms. But adherence to the confidentiality term would have naturally obviated the disparagement the Court may have in mind (pp. 21-22).

10. Stottlemire pushed the confidentiality terms, but talked about "kicking ass," apparently because he decided wrongly that Coupons could do nothing about his fraud and intentional breach (pp. 12-14, 23-24).

11. Stottlemire did attempt to mislead the Court by repeatedly citing Coupons' counsel's post-breach email about Stottlemire's strategic decision to make the whole settlement public (pp. 9-10).

## II.    STATEMENT OF UNDISPUTED AND DISPUTED MATERIAL FACTS

### A.    Stottlemire Promised Not To Claim Victory

On November 13, 2008, Coupons and Stottlemire participated in Early Neutral Evaluation with evaluator Harold McElhinny.[1] As Stottlemire admits, aside from the dismissal of Coupons' complaint (the natural *sin qua non* of any settlement agreement) the only material term for him was confidentiality of the agreement. (Motion to Enforce, at 3:5-7.) At the ENE, Stottlemire stated that he wanted confidentiality because he did not want Coupons to claim victory. (Cusack Decl., at ¶ 4.) Coupons also wanted confidentiality for the same reason, so Coupons agreed to this term. (Declaration of Steven Boal in Opposition to Motion to Enforce ("Boal Decl."), at ¶¶ 12, 14.) Both had fundamental reasons for not wanting the other to declare victory. As discussed below, for Stottlemire it was saving reputation. For Coupons, it wanted to avoid confusion in the marketplace among clients and potential clients, to avoid encouraging other coupons hackers to attempt to circumvent Coupons' new security features, and to avoid the resulting prejudice from the predictable effects of Stottlemire's disclosure of confidential settlement terms. (Boal Decl. ¶¶ 12, 14, 16-22.) The parties therefore entered into a simplified settlement agreement at the ENE

---

[1] Stottlemire disclosed statements and conduct at the ENE to support this motion. He then stipulated, as he must, to waive the confidentiality of the settlement discussions at the ENE. So has Mr. McElhinny. *See* Stipulation attached to Declaration of Dennis M. Cusack in Opposition to Defendant's Motion to Enforce ("Cusack Decl.") as Ex. A. Under Local ADR Rule 5-12(b)(1), such a stipulation is an exception to the ENE confidentiality rules.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –      - 3 -
USDC/NDC/SJ 5:07-CV-03457 HRL

-22675\1847383.3

session. The terms were few: a stipulated dismissal with prejudice; mutual releases; each party to bear their own attorneys' fees and costs; and the terms would remain confidential.

The confidentiality term makes no exceptions for the term of the agreement requiring a dismissal with prejudice. It also applies by its terms to both parties, as Stottlemire acknowledges. (Motion to Enforce at 3:13-17.) No one at the ENE suggested that there were any exceptions to it, or that it was not mutual. (Cusack Decl., at ¶ 5.)

## B.    Confidentiality Was Material To Both Parties

Stottlemire's conduct during the course of the litigation further demonstrates why confidentiality was material, encompassed the whole settlement, and required both sides to refrain from claims of victory. Stottlemire admits that he had been blogging about the case all along – claiming that he was right, that Coupons was a bully, that he would be victorious in establishing his right to circumvent Coupons' security measures and print unlimited numbers of coupons, and that the DMCA gave Coupons no protection. Indeed, all this was so clear to him that he threatened to sue Coupons for malicious prosecution. (Motion to Enforce, at 2:9-20.) He touted victories after each of the Court's orders on the first two motions to dismiss.

Then he received a rude awakening that required a settlement, and a way to preserve his reputation among other hackers and interested media. The Court's November 6 Order denying Stottlemire's motion to dismiss the Third Amended Complaint established that Coupons had a right to assert DMCA and common law claims against Stottlemire for his circumvention activities. Stottlemire would finally have to answer the allegations, but by that time the material facts were virtually all undisputed, as even Stottlemire has acknowledged. (December 19, 2008 Motion to Stay Discovery, at 9:18-23; *see also* Stottlemire's September 3, 2008 Motion for Sanctions, at pp. 4-6.) Despite this new reality, Stottlemire says that he continued to say in his blog that he had a claim for malicious prosecution. (Motion to Enforce, at 2:15-20.) Once he decided to settle, therefore, Stottlemire needed to prevent Coupons from publicly claiming victory because this would undermine the reputation he had created through his blog.

Stottlemire was already thinking along these lines after Coupons opposed his motion to dismiss on October 7, 2008. On October 16, Stottlemire proposed a settlement in which he

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 4 -

-22675\1847383.3

dramatically dropped his monetary demands from $1.2 million to $300,000, and proposed confidentiality in addition to a dismissal. (*See* Exhibit B to the Cusack Decl.)

Coupons responded that while it was willing to talk settlement, his putative malicious prosecution claim was valueless and Coupons would never pay him money. (*See* Exhibit B to the Cusack Decl.) Coupons also knew by then that any consideration from Stottlemire would not include money because he was unemployed and had brandished his judgment-proof status based on unpaid tax liens and other judgments against him. (Cusack Decl., at ¶ 8.) Stottlemire had also resisted a settlement in the form of a consent judgment, or one that included a promise not to attempt to circumvent Coupons' technology. (Cusack Decl., at ¶ 13.)

Instead of a monetary payment from Stottlemire, or a public promise, and in light of his discussion of the case on the Internet, if the case was going to settle, Coupons required a confidentiality term. (Boal Decl. ¶ 12.) The other pre-condition to settlement for Coupons was establishing that Coupons could state claims against, and seek redress from, hackers like Stottlemire who attempted to undermine Coupons' clients' marketing campaigns.

The opportunity to settle on the terms Coupons needed presented itself after the Court issued its Order on the motion to dismiss the Third Amended Complaint. The Order confirmed Coupons' right to proceed against Stottlemire under the DMCA and state law claims, on a factual record by then largely undisputed. Coupons could point to that Order to show it had a legal means to protect its clients' marketing campaigns. That record then freed Coupons to agree to a settlement that showed that Coupons had obtained no remedy for its claims against Stottlemire, so long as Stottlemire agreed to keep the settlement terms confidential. The pre-settlement record would speak for itself, without either Coupons or Stottlemire claiming victory and creating concerns among Coupons' clients and potential clients about Coupons' right to protect its product and brand from hackers encouraged by any Stottlemire settlement spin. (Boal Decl., at ¶ 14.)

Before the ENE, Stottlemire had already expressed an interest in confidentiality, so Coupons felt that the pieces were in place for a settlement it could live with. (*See* Boal Decl., at ¶¶ 11-12, 14.) Relying on Stottlemire's representation that he wanted confidentiality including no claims of victory, Coupons agreed to settle. (Cusack Decl. ¶ 4; Boal Decl. ¶ 12.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –      - 5 -
USDC/NDC/SJ 5:07-CV-03457 HRL

-22675\1847383.3

1    A few days after the ENE, Coupons sent to Stottlemire a draft stipulated dismissal with

2    prejudice, and a mutual release.  Stottlemire admits that when he received the stipulated

3    dismissal, a question was raised in his mind about whether the filing of it in the public record was

4    consistent with the confidentiality term.  Stottlemire claims he "believed with good cause" that:

> Either (1) CI's agreement to dismiss this action . . . with prejudice
> was not subjected to the confidentiality clause of the settlement
> agreement, or (2) CI was requesting an alteration of the settlement
> agreement whereby (sic) allowing the parties to disclose to the
> public CI was dismissing this action against Stottlemire with
> prejudice. Stottlemire believed this since it would be impossible for
> the parties to file the Stipulation without the public having complete
> access to the information contained therein.

(Motion to Enforce, at 4:3-8.).  Stottlemire's first "belief" was without basis because the

agreement explicitly made the dismissal with prejudice subject to the confidentiality term; the

settlement agreement stated that confidentiality covered all terms of the agreement.  There was

nothing contrary in the four corners of the agreement, and Stottlemire does not suggest that there

was any discussion to the contrary.

Further, Coupons had never suggested that the stipulated dismissal would not, or could

not, be filed under seal.  There was nothing that prevented either party from filing the dismissal

under seal.  Indeed, even if the parties had ultimately not filed it under seal, both parties would

still have been obligated under the confidentiality term and in good faith, to do and say nothing to

draw attention to the dismissal.  Stottlemire knew the public's access to the stipulation did not

mean that bloggers would pick up the dismissal; otherwise, he would not have rushed to publicize

the dismissal or explain what it meant.

Stottlemire's alternative admitted "belief" implies nonsensically that Coupons was

somehow *silently* asking Stottlemire to amend the settlement agreement to permit Stottlemire to

publicize the dismissal with prejudice.  Stottlemire's belief assumes that Coupons wanted a

material change in the agreement that could only work to Coupons' disadvantage by allowing

Stottlemire to disclose the settlement term and to claim victory.

We know, however, that he did not believe these assumptions for a heart beat because he

admits that he said nothing to Coupons about his claimed confusion.  (Motion to Enforce, at 4:7-

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 6 -

-22675\1847383.3

14.) He did not ask whether the stipulation should be filed under seal, or if it could not, whether confidentiality still required the parties, in good faith, to refrain from drawing attention to it or discussing it. Stottlemire, in other words, was not looking to honor his promise; he was determined to breach it and was looking for excuses.

## C.    Stottlemire Breached The Confidentiality Provision

Before the parties had even agreed on the wording of the mutual release, and before the dismissal was filed, Stottlemire blogged that the parties had settled. He drew specific attention to the dismissal with prejudice. (Motion to Enforce, at 4:15-24.) He went even further and explained what the legal term of art, "with prejudice," means – that Coupons could not file the same action against Stottlemire again. *Id.* He included a link on his blog to the docket entry in which Coupons informed the Court that a settlement had been reached. *Id.*[2]

In addition, on November 20, 2008, Stottlemire announced on another Internet bulletin board: "The lawsuit I have been involved in over the past 16 months has finally come to a close. Coupons, Inc. has decided to dismiss the claims they have pending against me in Federal Court and I have agreed to allow them to do so." (Boal Decl, Ex. D, post #1.) Another user then asked whether Stottlemire would be allowed to continue to blog about his circumvention methods, and Stottlemire said, "The blog will remain intact and updated as needed." (*Id.*, post #13.)

Stottlemire also admits that by posting the entry to his blog, he caused a copy of it to be emailed to persons who subscribe to his blog, including journalists and other bloggers. He then agreed to an interview with David Kravets, a wired.com journalist, among others. Although he says he told Kravets that the settlement terms were confidential, he had already disclosed the dismissal with prejudice and pointedly explained what that meant. Stottlemire then says that he gave Kravets a statement in which he boasted that he had achieved victory in the case, asserting that he "kicked their [Coupons] ass," "refus[ed] to succumb to their bullying tactics" and "continued to assert [his] innocence." (Motion to Enforce, at 5:3-18.)

---

[2] That letter disclosed none of the settlement's terms, a fact Stottlemire could not have missed.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 7 -

-22675\1847383.3

1   By explaining the dismissal "with prejudice," and by claiming victory, Stottlemire

2   intended to convey the message that, in return for dismissing the case, Coupons got nothing in the

3   settlement that it had been seeking in the lawsuit.  This was precisely what he agreed in the

4   confidentiality term and at the ENE the parties would not do.  *See* discussion, *supra*, pp. 16-21.

5       He succeeded in conveying that message.  The Wired.com article begins –

6       **Coupon Hacker *Defeats* DMCA Suit**

7       A California online coupon generating company ***is dropping*** its
8       Digital Millennium Copyright Act lawsuit against a man sued for
        posting commands allowing users to print an unlimited number of
9       valid coupons.  (Exh. E to Motion to Enforce (emphasis added).)[3]

10  He also disclosed that the settlement allowed him to keep posting his circumvention instructions.

11  The article states: "Terms of the settlement were not made public.  *They do not require*

12  *Stottlemire to remove the workaround*, which is still published here."  *Id*. (Emphasis added).

13      Stottlemire thus disclosed three terms of the settlement:  (1) the dismissal with prejudice;

14  (2) that Coupons did not receive any remedy for its claims against Stottlemire; and (3)

15  specifically that Stottlemire was not required to stop publishing his circumvention instructions.

16      Coupons immediately informed Stottlemire of his breach of the core confidentiality term

17  of the agreement and that his conduct – abusing the settlement process and disclosing the

18  confidential settlement and misleading information – had prejudiced and would continue to

19  prejudice Coupons.  (Exh. F to Cusack Decl.; *see* Boal Decl., at ¶¶ 16-22.)  Coupons suggested

20  that Stottlemire might remedy the situation by disclosing the truth; but Stottlemire refused to do

21  so.  In light of these circumstances, Coupons' counsel made clear to Stottlemire that it would, and

22  then did, rescind the settlement agreement.  (Exh. C to Cusack Decl.)  Coupons has told

23  Stottlemire it would not file the dismissal (thus relieving Stottlemire of his release).  (*Id*.)

24      Also relevant to the proof of Stottlemire's fraud are other misrepresentations and

25  omissions he has made with the intent to deceive since Coupons rescinded, which cast doubt on

26  his credibility and shed light on his motives.  First, Stottlemire remains less than candid, at best,

27

28  [3] Other articles also conveyed the same message.  (See Boal Decl., Exhs. F, G, I, and J.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –        - 8 -
USDC/NDC/SJ 5:07-CV-03457 HRL

-22675\1847383.3

with the Court and Coupons about what he said to Mr. Kravets, and others, about the settlement. In emails and in his briefing after his improper disclosure, despite Coupons' prodding, Stottlemire never denied that he disclosed that Coupons received nothing in settlement. The first time he actually responded was in his declaration filed in support of this motion. (*See* Motion to Enforce, at 5:3-18.) Even there, although he says he told Mr. Kravets that the terms of the settlement were confidential, he does not give a full account of what else he and Mr. Kravets discussed. Nor does he say who else he spoke to or communicated with by email or chatroom, other than Ms. Davis. He never denies what is otherwise obvious – that the purpose of his disclosures was to convey the message that he had given nothing to Coupons in exchange for the dismissal.[4]

Stottlemire has also twice misrepresented statements made by Coupons after Coupons rescinded. In a December 11, 2008 email to Mr. McElhinny, Stottlemire misquoted Coupons' brief (inserting ellipses in order to create a false reading) to accuse Coupons of disclosing Mr. McElhinny's ENE evaluation. (Exh. D to Cusack Decl.) Coupons did no such thing, as the full excerpt from Coupons' brief shows. (*Id.*; Coupons' brief on the ENE motion, at 6:3-7)

Stottlemire continues to rely on a statement made by Coupons' counsel that Coupons "is fine with making everything public regarding the settlement" out of context and in a way that misleads the Court. (Motion to Enforce at 1:16-17.) As Coupons has set forth previously, reading the entire email in context makes clear that Coupons' counsel wrote this email after Stottlemire publicly disseminated false and misleading information boasting of his victory in the case, and after Stottlemire threatened a motion to enforce the settlement. Coupons wanted to set the public record straight in order to remedy the breach and it had offered this solution to Stottlemire. Stottlemire rejected that solution. Coupons' counsel's email then informed Stottlemire that given his tactics and his insistence on proceeding with this motion, he would necessarily disclose, or require to be disclosed, facts about the parties' respective motives for settling. It was in this context that Coupons' counsel said after Stottlemire's breach, that Coupons

---

[4] In his brief on the Motion to Enforce, he asserts in very careful language that he never said "that the dismissal with prejudice was given … for no money" before Coupons sent the email that "it was fine with making everything public," thereby conceding that he did disclose this afterwards. (Motion to Enforce, at 10:9-15.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

too was fine with setting the record straight in the course of briefing this motion. (Exh. E, Cusack Decl.)

Indeed, even though Coupons told Stottlemire repeatedly that it believed he committed fraud in connection with the settlement – i.e., made a promise without intent to perform – *Stottlemire has never denied that when he entered the settlement agreement, he fully intended to go out as soon as possible and claim that, as a result of the settlement, he defeated Coupons in the lawsuit*. This is in keeping with his admission that he was looking for a settlement that did not require him to make any promises. (Motion to Enforce, at 2:28- 3:1.)

In fact, Stottlemire has stated bluntly that it does not matter if he committed fraud, Coupons cannot rescind anyway. (Motion to Enforce, at 10:22- 11:7.) His defense has been that he did not breach, but even if he did, the release language permitted him to induce the agreement by fraud and then breach it with impunity. (Motion to Enforce, at pp. 10-11, and Stay Motion, at 8:4-18.) The only conclusion to be drawn from these defenses, along with his tacit acknowledgement that the disclosures were planned at the time of settlement, is that Stottlemire fully intended to breach, believing that he could get away with it because he mistakenly thought that Coupons would have no remedy.

### III. STOTTLEMIRE'S MOTION FOR SUMMARY JUDGMENT ON THE SETTLEMENT AGREEMENT MUST BE DENIED

Summary judgment in favor of Stottlemire is not warranted. The undisputed facts demonstrate that Coupons properly rescinded the settlement agreement and the settlement agreement is no longer enforceable. To the extent issues of fact are disputed, Coupons is entitled to further develop these facts in support of its opposition.[5] No discovery has been conducted on

---

[5] "Rule 56 provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' 2 Fed. R. Civ. P. 56(c). A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. ... [A]t summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Put another way, if a rational trier of fact might

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 10 -

-22675\1847383.3

the subject of the settlement agreement and Mr. Stottlemire's post-settlement conduct. Coupons therefore requests in the alternative under Rule 56(f) leave to conduct discovery (principally the deposition of Mr. Stottlemire) in order to further address the factual issues. (Cusack Decl., ¶ 14.)

## IV. COUPONS PROPERLY RESCINDED THE SETTLEMENT AGREEMENT

Coupons agrees that a settlement agreement was breached. Due to Stottlemire's subsequent actions, Coupons then properly rescinded the settlement agreement. Because the contract was rescinded, it cannot be summarily enforced.

### A. California State Contract Law Applies

"An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law. . . . The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989)(citations omitted). Here, California contract law applies because the settlement agreement was entered into in California, Coupons is located in California, and at the time of settlement Stottlemire resided in California. *Id*. at 759-760.

### B. Legal Standard for Rescission

California Civil Code section 1689(b) permits rescission in the following circumstances, among others:

> (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

> (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds. . . .

> (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.

resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 630-631 (1987).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 11 -

-22675\1847383.3

1    Rescission is a unilateral act, accomplished by notice and an offer to return any

2    consideration received; no judicial intervention is required. Cal. Civ. Code § 1691; *Runyan v.*

3    *Pacific Air Indus.*, 2 Cal. 3d 304, 311-13 (1970); *Peterson v. Highland Music, Inc.*, 140 F.3d

4    1313, 1322-23 (9th Cir. 1998). Coupons has in fact notified Stottlemire that the agreement is

5    rescinded.

6    Just as any other contract, a settlement agreement or release can be rescinded if these

7    statutory guidelines are met. *Matthews v. Atchison, T. & S. F. Ry. Co.*, 54 Cal. App. 2d 549, 557

8    (1942) ("A release is a contract and as such is subject to rescission for the same reasons as are

9    other contracts, including fraud and mistake of fact"); *see also Gorman v. Holte*, 164 Cal. App. 3d

10   984, 988 (1985) ("Compromise settlements are governed by the legal principles applicable to

11   contracts generally").

12   **C.     Coupons Was Entitled To Rescind The Agreement On The Grounds Of Fraud**

13          **1.     Stottlemire Promised Confidentiality Without Any Intent To Perform**

14   A party to a contract has grounds to rescind the contract if the consent of the party seeking

15   rescission was obtained through fraud. Cal. Civ. Code § 1689(b)(1); *see also Citicorp Real*

16   *Estate v. Smith*, 155 F.3d 1097, 1103 (9th Cir. 1998). Cal. Civ. Code § 1572 states: "Actual

17   fraud, within the meaning of this chapter, consists in any of the following acts, committed by a

18   party to the contract, or with his connivance, with intent to deceive another party thereto, or to

19   induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by

20   one who does not believe it to be true; . . . 3. The suppression of that which is true, by one having

21   knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5.

22   Any other act fitted to deceive."

23   "False representations, the willful suppression of material facts, and the making of a

24   promise without any intention of performing it, if committed by a party to a contract with intent

25   to deceive another party thereto, or to induce him to enter into the contract, constitute fraud. (Civ.

26   Code, § 1572.) (2) The fact represented or suppressed, as the case may be, is deemed material if

27   it relates to a matter of substance and directly affects the purpose of the party deceived in entering

28   into a contract." *Thomas v. Hawkins*, 96 Cal. App. 2d 377, 379 (1950). "It is settled that a single

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –     - 12 -
USDC/NDC/SJ 5:07-CV-03457 HRL

-22675\1847383.3

material misrepresentation knowingly made with intent to influence another into entering into a contract will, if believed and relied upon by the other, afford a complete ground for rescission." *Leary v. Baker*, 119 Cal. App. 2d 106, 109 (1953).

### a. Stottlemire promised confidentiality and no claims of victory.

At the ENE session, Stottlemire confirmed that the confidentiality provision was the core term. He falsely represented that he wanted confidentiality in order to prevent Coupons from claiming victory. He did not suggest then, or since, that confidentiality meant that Coupons could not claim victory, but that he could. To the contrary, he confirmed at the ENE his understanding of and agreement to the parties' intent to sign a confidentiality term to stop either party from claiming victory. (Cusack Decl., ¶ 4-5.) Stottlemire's conduct demonstrated that he had no intention of keeping the promise of confidentiality, which induced Coupons to enter into the settlement agreement. As discussed above, the parties and Mr. McElhinny have agreed to waive the confidentiality provision of the ENE process. Local ADR Rule 5-12(b)(1).

### b. Stottlemire's admissions and conduct before and after the settlement confirms that he did not intend to perform.

Stottlemire's fraudulent intent is also apparent from the circumstances surrounding the settlement agreement and his admissions in his pleadings. "As direct proof of fraudulent intent is often an impossibility, fraud may be established by the circumstances surrounding the transaction. . . . Fraud is not generally practiced in the open light of day and for that reason is not susceptible of direct proof but must be spelled out from circumstantial evidence." *Wilke v. Coinway, Inc.*, 257 Cal. App. 2d 126, 138 (1967).

Here, Stottlemire offers evidence of his state of mind at the ENE in his Motion to Enforce. Stottlemire admits that he wanted to, and did, publicize that he was victorious in defending Coupons' DMCA claims. (Motion to Enforce at 4:15-5:18.) He states that he agreed with his wife that he would settle only if the settlement did not require him to make any promises. (Motion to Enforce at 2:28-3:1.) He never shared with Coupons those objectives when he then promised not to disclose settlement terms, including through a claim of victory.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 13 -

-22675\1847383.3

1    Further, Stottlemire's chronology from the November 13 ENE to Stottlemire's November

2    19 blog by itself leaves little doubt that Stottlemire did not intend to honor the confidentiality

3    provision when he entered into it. (Motion to Enforce at 2:24-6:2.) As he describes it, he was

4    anxious to complete the mutual release and have Coupons file the stipulated dismissal, so that he

5    could – he mistakenly thought – breach the confidentiality provision with impunity. But he

6    jumped the gun and began his blogging breaches before Coupons signed the release and filed the

7    dismissal.

8    Since then, in an effort to justify his actions, Stottlemire has tried to deceive both Mr.

9    McElhinny and this Court about Coupons' statements. He waited over two months even to

10   address precisely what he said to the journalists who interviewed him, and even then has not

11   given a full account of his conversations and disclosures. He has never denied that he fully

12   intended to proclaim a victory over Coupons, notwithstanding his representations at the ENE. He

13   has simply tried to claim that even his fraud does not matter because the draft release language

14   immunized him from his fraud.

15   Had Coupons known the truth, Coupons would not have entered into the settlement

16   agreement. Coupons had the right to rescind the agreement because of Stottlemire's fraud. Cal.

17   Civ. Code § 1689(b)(1).

18                  **2.      Stottlemire Knew Coupons' Consent Was Given By Mistake**

19   Alternatively, rescission is proper since Stottlemire was aware that Coupons' agreed to the

20   settlement under the mistaken understanding that: 1) Stottlemire would not publicly claim victory

21   in the case; and 2) at the very least that Stottlemire himself would not publicly disclose that

22   Coupons would dismiss the case with prejudice or other terms of the settlement. As to the first

23   mistake, Stottlemire created the mistaken understanding through his statements at the ENE. As to

24   the second, Stottlemire admits he knew of Coupons' mistake and did nothing to correct it.

25   Under Civil Code section 1689(b)(1), rescission is proper if a party's consent to the

26   agreement was given by mistake. Mistake may be either of fact or law. Cal. Civ. Code § 1576.

27   "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person

28   making the mistake, and consisting in: 1. An unconscious ignorance or forgetfulness of a fact

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT  –          - 14 -
USDC/NDC/SJ 5:07-CV-03457 HRL                                                        -22675\1847383.3

past or present, material to the contract; or, 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." Cal. Civ. Code § 1577.

"A mistake need not be mutual. Unilateral mistake is ground for relief where the mistake is due to the fault of the other party or the other party knows or has reason to know of the mistake." *Architects & Contractors Estimating Services, Inc. v. Smith*, 164 Cal. App. 3d 1001, 1007-1008 (1985); *see also*, *Merced County Mut. Fire Ins. Co. v. California.*, 233 Cal. App. 3d 765, 772 (1991) ("[R]escission is available for a unilateral mistake, when the unilateral mistake is known to the other contracting party and is encouraged or fostered by that party"). "[K]nowledge by one party that the other is acting under mistake is treated as equivalent to mutual mistake for purposes of rescission. . . . When a contract is still executory, and the parties can be put *in status quo*, one party to the contract will not be permitted to obtain an unconscionable advantage through enforcement of the contract where he knows of the other's mistake, where such mistake is material and not the result of neglect of a legal duty or an error in judgment, and the requirements for rescission are fulfilled." *Brunzell Constr. Co. v. G. J. Weisbrod, Inc.*, 134 Cal. App. 2d 278, 284, 286 (1955) (italics in original) (citation omitted) (affirming finding that subcontractor had right to rescind contract where the subcontractor made a material omission in the bid it submitted, the city "knew that such a mistake had been made, that it took unfair advantage of this mistake to incorporate decking into the contract though the bid price was made exclusive of decking, and that [the subcontractor] assented to the contract under an honest misapprehension which [the city] was trying to exploit").

Here, Stottlemire's statements at the ENE and intense interest in the confidentiality agreement caused Coupons to believe that Stottlemire would adhere to the confidentiality agreement and that neither party could publicly proclaim victory as a result of the settlement. Coupons also understood that neither party would intentionally and publicly disclose any terms of the settlement. Relying on this belief, Coupons entered into the settlement agreement. Even Stottlemire admits that he intended all along to make a public declaration of victory following the settlement, and his actions confirm that intent. He did not tell Coupons about that intent.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 15 -

-22675\1847383.3

He also admits to recognizing that, when Coupons sent him the stipulation for dismissal, it became apparent to him that he and Coupons might have a different understanding about how the dismissal was to be handled in light of the confidentiality provision. See discussion above, at pp. 5-7, discussing Stottlemire's Motion to Enforce, at 3:18-4:14. He also admits he did nothing to correct the misunderstanding.

Stottlemire's explanations about what he believed at the time, and why, taken at face value, show that he was looking for an excuse to justify his anticipated breach of the confidentiality provision. (*supra*, at p. 6) No other conclusion explains his admission that despite his asserted knowledge of an ambiguity in whether the dismissal with prejudice could be publicized, he never raised the issue with Coupons. Even if not labeled fraudulent inducement during the ENE, Stottlemire was at the very least aware of a mistake by Coupons, as he admits that he knew that Coupons was unaware of Stottlemire's spin. Specifically, he looked outside the four corners of the settlement agreement to interpret it to mean that: 1) the dismissal with prejudice somehow ended up as an exception to Stottlemire's obligation to keep the settlement terms confidential; and 2) "confidential" meant Stottlemire could characterize the settlement as a victory – even if that meant conveying the message that Coupons had not achieved any remedy in the settlement – so long as he did not recite all its literal terms. Stottlemire concedes that he knew Coupons did not read the settlement agreement this way. Coupons was entitled to rescind the settlement agreement on the grounds of mistake. Cal. Civ. Code § 1689(b)(1).

D. **The Confidentiality Term Was Material, And Stottlemire's Breach Caused A Failure Of Consideration**

Stottlemire's public disclosure of the settlement terms caused a material failure of the primary consideration bargained for by Coupons – confidentiality of the settlement – fully justifying Coupons' rescission.[6] Illustrative is *Thomas v. Department of Housing and Urban*

---

[6] "A party to a contract may rescind if there is a material breach by the other party. (Civ. Code § 1689, subd. (b)(2).)" *Pennel v. Pond Union Sch. Dist.*, 29 Cal. App. 3d 832, 838 (1973). Rescission is allowed where a party's breach constitutes a material violation of the contract. *Crofoot Lumber, Inc. v. Thompson*, 163 Cal. App. 2d 324, 333 (1958)(record supported trial court finding that material breach constituted a failure of consideration); *see also Wilson v. Corrugated*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 16 -

-22675\1847383.3

*Development*, 124 F.3d 1439 (Fed. Cir. 1997), where the court of appeal reversed the Merit

System Protection Board on an abuse of discretion standard, finding that the breach of a

confidentiality provision in a settlement agreement between an employee and HUD was material

and entitled the employee to rescind it.  There, Thomas was demoted based on charges of

mismanagement and abuse of authority.  After appealing the demotion, he agreed to a settlement

that called for restoration to his original pay grade and a transfer to a different federal agency for

a period of time, and confidentiality regarding the adverse employment action and settlement.  *Id.*

at 1440.  A HUD employee later disclosed to someone considering Thomas for a new position

that Thomas had run into problems while at HUD.  *Id.* at 1441.  The court of appeal held that the

Board's finding of non-materiality was an abuse of discretion (*id.* at 1441-42), because

confidentiality was "a matter of vital importance" to the settlement for Thomas, as it was intended

to allow Thomas to transfer to a different position and give him a chance to look for a new job.

*Id.* at 1442.

Here too, confidentiality was a matter of vital importance to both Coupons and

Stottlemire, as demonstrated by Stottlemire's admissions and the Boal Declaration. (See above at

pp. 4-7, Boal Decl. at ¶¶ 12, 14, Motion to Enforce, at p. 3, and Cusack Decl. ¶ 4-5.) Indeed,  the

confidentiality term was at the root of the settlement and Coupons' agreement to dismiss with

prejudice given Stottlemire's financial inability to pay.

### 1. The Meaning Of The Agreement, And Its Breach, May Be Inferred From The Parties' Statements and Conduct, As Well As From The Contract Language

The Court can consider the parties' statements and conduct leading up to the settlement

agreement in considering the meaning of the contract and the materiality of the breach.  *See*

*Wilson*, *supra*, 117 Cal. App. 2d at 695 (analysis of the provisions of the contract, the language

used, and the circumstances under which it was executed, are relevant to determining existence of

material breach to support rescission).  Here, the explicit terms of the settlement agreement, the

surrounding circumstances of Stottlemire's and Coupons' interest in keeping the settlement terms

*Kraft Containers*, 117 Cal. App. 2d 691, 696 (1953)(willful departure from central obligation of
contract amounted to a material failure of consideration, entitling defendant to rescind).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT  –     - 17 -
USDC/NDC/SJ 5:07-CV-03457 HRL

-22675\1847383.3

confidential , and the parties' conduct, demonstrate the importance and intent of the confidentiality provision.

The principles of contract interpretation also permit consideration of the circumstances surrounding the agreement to make clear the meaning of the settlement agreement, and the materiality of Stottlemire's breach. "'The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties.' . . . Thus, a 'court's paramount consideration in construing [a] stipulation is the parties' objective intent when they entered into it.' . . .'That intent is to be inferred, if possible, solely from the written provisions of the contract.'" *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co*., 107 Cal. App. 4th 516, 525 (2003) (internal citations omitted). "In evaluating the contractual language, however, we also 'tak[e] into account all the facts, circumstances and conditions surrounding the execution of the contract.'" *Falkowski v. Imation Corp*., 132 Cal. App. 4th 499, 505-506 (2005) (internal citations omitted). Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself or from extrinsic evidence of the parties' intent. *Southern Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 848, 851 (1995).

At bar, the simplicity of the settlement agreement and the overarching confidentiality term sufficed to demonstrate the materiality of the agreement. The additional facts and circumstances support the materiality of the confidentiality term, and preclude Stottlemire's motion.

**2.      The Confidentiality Term Is Mutual And Contains No Exceptions**

The settlement agreement explicitly stated: "The terms of the settlement will remain confidential." The first term of the settlement agreement was, "Coupons, Inc. will dismiss its pending lawsuit against Mr. Stottlemire with prejudice." (Motion to Enforce, Exhibit A.) The confidentiality term does not suggest exemption of the dismissal with prejudice. Nor does it exempt the fact that Coupons received *only* a release and the confidentiality term. The language of the settlement agreement therefore explicitly required the parties to maintain confidentiality of the terms of the settlement, including that the suit would be dismissed with prejudice, and that Coupons received nothing more than a release and confidentiality.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT  –
USDC/NDC/SJ 5:07-CV-03457 HRL                    - 18 -                    -22675\1847383.3

To the contrary, it was obviously important for the parties to keep confidential that Coupons was dismissing the case with prejudice. It gave Stottlemire peace, but given the lack of any consideration from Stottlemire, Coupons did not want Stottlemire using the dismissal with prejudice, combined with a claim of victory, to suggest that he was correct and that he could blithely continue his circumvention tactics. And so Coupons was willing to give up a consent decree or other form of injunctive relief and monitoring, or a dismissal without prejudice, but only if Stottlemire did not twist the dismissal of prejudice into a victory, which it clearly was not.[7]

Stottlemire makes much that the parties did not discuss putting the stipulation with prejudice under seal, as somehow giving him permission to broadcast that term of the settlement. But the sealing status of the dismissal was irrelevant to the materiality of the confidentiality term, to Stottlemire's confidentiality obligation and to Coupons' right to rescind once Stottlemire breached that obligation. The stubborn fact was that whether or not the parties discussed putting the stipulation under seal prior to Stottlemire's breach gave him no license to publicize to the world the stipulation with prejudice and his victory. To the extent that the stipulation's filing status matters, there is no reason to believe that the unsealed stipulation with prejudice would have registered on the market's radar screen, and certainly not without Stottlemire's adornments and explanation of the victory that it meant for him. Indeed, it was Stottlemire who linked the world to the pleadings in this matter; the market was not beating a path to the clerk's archives.

And to answer the court's question from the January 27 hearing, under local rule 79-5 the stipulation with prejudice could have been filed under seal.[8] Surely Stottlemire could not have objected to that approach if he had decided to adhere to the confidentiality term. And if the court would not have allowed the stipulation to be sealed, Coupons and the hypothetically honest Stottlemire would have had to deal with that issue. But the real answer to the Court's question is that whether or not the Court would have agreed to seal the stipulation does not appear relevant to

---

[7] *See* Federal Rule of Civil Procedure 41(a)(1)(B), "Voluntary dismissal. Effect: Unless the notice or stipulation states otherwise, the dismissal is without prejudice."

[8] Rule 79-5 allows a party to file a document along with a motion to file under seal, with a showing that the document or its contents is protectable, and Coupons could have chosen to pursue this option had the time come to file the stipulation.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –          - 19 -
USDC/NDC/SJ 5:07-CV-03457 HRL

-22675\1847383.3

the fraud, mistake, or material failure of consideration issues before this Court. Indeed, this particular inquiry should end with Stottlemire's admission in his Motion to Enforce that he understood that there was a confidentiality term under which both parties promised to keep confidential the terms of the settlement. (Motion to Enforce 1:7-8, 3:16-17.)

### 3.  Confidentiality Was Material To Both Parties

The surrounding circumstances and the parties' conduct show that confidentiality was not a throw-away term, but material to both parties. The parties distilled their mutual concerns in the explicit offer by Stottlemire, accepted by Coupons at the ENE, that neither side was to use the settlement to claim a victory. See above at pp. 4-7, and Cusack Decl, at ¶ 4-5. Confidentiality was the most significant consideration Coupons received in the settlement agreement.

### 4.  Stottlemire Materially Breached

Stottlemire directly and immediately breached the confidentiality term of the agreement. He disclosed terms of the settlement – that the case would be dismissed with prejudice and that he was not required to take down his (albeit moot) circumvention instructions – and when he boasted on his blog and to reporters that he "kicked their ass," "refus[ed] to succumb to their bullying tactics" and "continued to assert [his] innocence." Stottlemire's claim of victory conflicted with the confidentiality term because it necessarily implied that the settlement resulted in Coupons obtaining no remedy for its claims. The victory claim also left Coupons unable to rebut it and mitigate damages without addressing the settlement terms. Stottlemire breached the material confidentiality provision that was supposed to preclude exactly his behavior. The consideration due to Coupons under the settlement agreement failed, and Coupons was entitled to rescind. Cal. Civ. Code §§ 1689(b)(2) and (4).

In addition, the timing of Stottlemire's breach further supports Coupons' right to rescind the settlement agreement. As he admits in his Motion to Enforce, Stottlemire had already posted on his blog that "the action against me will be dismissed with prejudice . . . [which] means that Coupons, Inc. will be unable to file this action again" as he and counsel for Coupons were still finalizing the terms of the formal settlement agreement. The swiftness of Stottlemire's breach was telling. *See Pennel v. Pond Union Sch. Dist.*, 29 Cal. App. 3d 832, 838 (1973) ("[A] slight

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 20 -

-22675\1847383.3

1  breach of the contract at the outset may justify termination if it indicates future difficulty in

2  obtaining performance"); *Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 602

3  (1969) ("The timing of a breach is a relevant consideration in determining its materiality; a slight

4  breach at the outset may justify termination whereas a like breach later in performance may be

5  deemed insubstantial").  Stottlemire's actions clearly signaled to Coupons that Stottlemire did not

6  have any intent to abide by the confidentiality term of the settlement agreement, and Coupons

7  was justified in rescinding the contract.

8  **5.  <u>Coupons Was Prejudiced By Stottlemire's Breach</u>**

9  Coupons has been prejudiced by Stottlemire's breach of the settlement agreement because

10  Stottlemire's public announcement resulted in and caused Coupons injury.  See Boal Decl. at ¶¶

11  16-22.  A party seeking to rescind a contract must show that he has suffered prejudice although he

12  need not show pecuniary loss.  *Guthrie v. Times-Mirror* Co., 51 Cal. App. 3d 879, 886 (1975);

13  *see also Hefferan v. Freebairn*, 34 Cal. 2d 715, 721 (1950) (a party "need not plead or prove

14  pecuniary loss, so long as the record indicates that there was an injury or prejudice resulting from

15  the fraud"); *Wilson, supra*, 117 Cal.App.2d at 697 ("A willful default may be material though no

16  economic loss ensues.").

17  Through its lawsuit against Stottlemire, Coupons worked to establish its right to protect its

18  online coupons under the Digital Millennium Copyright Act and various state laws.  This result

19  was necessary as a legal matter to protect Coupons' intellectual property and the value of its

20  services to its clients.  But the establishment of Coupons' rights to assert these claims was also

21  important to send a message to the market – to Coupons' clients and potential clients, to its

22  competitors, and to other market participants such as trade associations – that Coupons would

23  protect the value of these services and its brand.  And so Coupons' necessary objective was both

24  to establish its legal rights and to make sure that the market did not develop an incorrect

25  perception of Coupons ability and willingness to protect these rights and its clients' interest in

26  well run advertising campaigns using Coupons' products. See generally Boal Decl. at ¶¶ 8-14.

27  After the Court's denial of Stottlemire's motion to dismiss, and given the futility of

28  proceeding against a judgment-proof Stottlemire, Coupons believed it had sufficiently established

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT  –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 21 -

-22675\1847383.3

its rights to proceed under the DMCA. Coupons was therefore willing to settle the lawsuit against Stottlemire. Coupons also understood that given Stottlemire's history of blogging about the case, it would be necessary to include a confidentiality term to prevent Stottlemire from blogging about the settlement, claiming victory in the case, and sending false signals to the marketplace. Not surprisingly, when Stottlemire breached confidentiality and posted a term of the settlement and mischaracterizations about the settlement on his website, he caused Coupons the harm it had negotiated successfully to avoid. Other bloggers and reporters in the online community picked up the story and, in accordance with Stottlemire's statements, incorrectly believed he had prevailed and that Coupons' rights were at risk. Stottlemire's claims were improper and false, and damaged Coupons' business. This false perception of Coupons' inability to seek legal redress, not disparagement as raised by the Court, was Coupons' concern at the time of the settlement discussion and is the prejudice that actually occurred.[9] (Boal Decl., at ¶¶ 16-22.)

### E. Coupons Was Entitled To Rescind The Agreement Because Stottlemire Repudiated His Obligation Of Confidentiality Under The Agreement.

Stottlemire's repudiation and anticipatory breach of the settlement agreement also supports Coupons' rescission.[10] Stottlemire impliedly repudiated the settlement agreement because his actions have made it impossible for him to perform his promise of confidentiality.

---

[9] The Court asked at the January 27 hearing why the parties did not insert a clause requiring "non-disparagement." Coupons' answer is that the confidentiality term more than sufficed to address all scenarios and that Coupons was not concerned about Stottlemire making untrue statements about Coupons actions or its products. *Compare* the concept of disparagement which: "includes statements about a competitor's goods that are untrue or misleading and are made to influence potential purchasers not to buy." *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1035 (2002). Rather, Coupons was concerned about Stottlemire disclosing settlement terms that created the misperception in the market that Coupons did not have legal remedies to address Stottlemire's conduct.

[10] "An anticipatory breach of contract occurs on the part of one of the parties to the instrument when he positively repudiates the contract by acts or statements indicating that he will not or cannot substantially perform essential terms thereof. . . ." *Guerrieri v. Severini*, 51 Cal. 2d 12, 18-19 (1958); "Anticipatory breach occurs when one of the parties to a bilateral contract repudiates the contract. The repudiation may be express or implied. An express repudiation is a clear, positive, unequivocal refusal to perform [citations]; an implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible [citations]." *Martinez v. Scott Specialty Gases*, 83 Cal. App. 4th 1236, 1246 (2000) (internal citations omitted). *Jeschke v. Lamarr*, 234 Cal. App. 2d 506, 511 (1965).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 22 -

-22675\1847383.3

His damage cannot be undone; Stottlemire can no longer comply with the confidentiality term of the settlement. Stottlemire has also expressly refused to attempt to mitigate the damage which he caused by his breach. Stottlemire's repudiation is complete, justifying Coupons' rescission.

### F.     The Terms Of The Mutual Release Do Not Preclude Rescission

Stottlemire asserts that the settlement agreement itself "precludes rescission of the agreement." Stottlemire contends that Coupons is bound to the agreement "regardless of what happened after CI agreed to the terms of the settlement agreement." (Motion to Enforce at pp. 10-11.) Wrong.

The draft Mutual Release provided that, "Coupons and Stottlemire each further represent, warrant and agree that the Settlement Agreement shall remain in full force, and in effect, notwithstanding the occurrence of any possible changes or differences in material fact." (Motion to Enforce, Exhibit B.) This language is common in releases, and its effect is to make clear that if facts *outside the parties' control* change, the contract is still binding. It does not immunize a party from remedies for his breach or fraudulent inducement. "A release is a contract and as such is subject to rescission for the same reasons as are other contracts, including fraud and mistake of fact." *Matthews v. Atchison, T. & S. F. Ry. Co.*, 54 Cal. App. 2d 549, 557 (1942).[11]

And there is nothing to Stottlemire's suggestion that Coupons' waived the confidentiality clause or its right to rescind by the release that is itself a part of the agreement subject to rescission. *See, Sime v. Malouf*, 95 Cal. App. 2d 82, 110 (1949) ("If it was [the defendants'] intention to obtain a release from the consequences of the very frauds they were committing, of which Sime was ignorant, and if they incorporated in it language designed to accomplish that purpose, this in itself, would have constituted a fraud upon plaintiff, rendering the release void and rescission unnecessary.")[12] Here, immediately upon learning of Stottlemire's fraud and

---

[11] In response to the Court's question, there is no requirement in the law that parties specify in the contract the various remedies that exist should the contract be breached, or fraud discovered. Rather, the opposite is true. "[A]n intention to limit contractual remedies must be clearly expressed." *Michel & Pfeffer v. Oceanside Properties, Inc.*, 61 Cal. App. 3d 433, 443 (1976). The remedy of rescission is available, even if the parties did not explicitly set forth this remedy in the settlement agreement.

[12] *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1152 (2005) (finding that a party who is fraudulently induced to enter into a contract cannot be deprived of its remedy to affirm the

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –      - 23 -
USDC/NDC/SJ 5:07-CV-03457 HRL

-22675\1847383.3

breach of the settlement, Coupons notified Stottlemire of its rescission. Coupons has done nothing to affirm the agreement subsequent to its rescission.[13]

### G. Allowing Coupons To Rescind The Settlement Agreement Is Equitable Due To Coupons' Prompt Notice Upon Realizing Stottlemire's Fraudulent Intent and Damaging Actions

Finally, Coupons' rescission of the settlement agreement created no injustice because it rescinded immediately upon learning of Stottlemire's breach and fraudulent intent and attempted to persuade Stottlemire to do the right thing by setting straight the public record. (Exh. F, Cusack Decl.) Instead, Stottlemire responded that he believed he had not breached. (*Id.*)

The contract was therefore still executory, and the parties were easily returned to the status quo. *See Harris v. Rudin*, *Richman & Appel*, 95 Cal. App. 4th 1332, 1342 (2002) (finding that a factor in favor of allowing rescission of a settlement agreement was that "the contract here was still in its executory stage when defendants gave notice of rescission and the parties could be returned to the status quo ante without having to undo any performance by either side").

## V. THE RESCINDED SETTLEMENT AGREEMENT CANNOT BE SUMMARILY ENFORCED

Here, the undisputed facts and Stottlemire's own admissions in his Motion to Enforce demonstrate that Stottlemire's actions and statements provided proper grounds for rescission of the settlement agreement. To the extent the facts of the ENE or Stottlemire's actions are not undisputed, Stottlemire's Motion to Enforce must still be denied. The existence of triable issues of fact preclude summary judgment enforcing the settlement agreement. *Harris*, 95 Cal. App. 4th

---

contract and sue for damages for fraud simply because the contract contained a release of unknown claims); *Channell v. Anthony*, 58 Cal. App. 3d 290, 304 (1976) ("a party who has been fraudulently induced into a conveyance can waive his right to rescind, if, after full discovery of the fraud, the party takes steps to affirm the transaction.") (citation omitted); *Whitney Inv. Co. v. Westview Development Co.*, 273 Cal. App. 2d 594, 603 (1969) ("When the injured party with knowledge of the breach continues to accept performance from the guilty party, such conduct may constitute a waiver of the breach.").

[13] In addition, the settlement agreement executed at the ENE does not contain the mutual release language, but states only that "The parties will exchange mutual releases in standard form." Therefore the language Stottlemire presumably relies upon does not even appear in the executed settlement agreement, but in the draft Mutual Release that Coupons never executed by Coupons due to Stottlemire's intervening breach. (Attachments A and D to Motion to Enforce.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 24 -

-22675\1847383.3

at 1335 (reversing summary judgment where defendants "raised triable issues of fact as to whether they were entitled to rescind the [settlement] agreement based on a mutual mistake of fact or law"). Further, Coupons would be entitled to discovery in order to more fully respond, under Rule 56(f).

Although Stottlemire suggests that a district court has the equitable power to summarily enforce an agreement to settle a case pending before it (*Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (Motion to Enforce, at p. 7), "[w]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing" and summary enforcement is not appropriate. *Callie*, 829 F.2d at 890. Here, the settlement agreement is no longer in existence because Coupons properly rescinded the agreement. To the extent any material terms are disputed, the parties must be allowed an evidentiary hearing on the matter.

## VI.    **CONCLUSION**

For the foregoing reasons, Coupons' has properly rescinded the settlement agreement and the Court should reject Stottlemire's Motion to Enforce.

Dated:  February 3, 2009                        FARELLA BRAUN & MARTEL LLP


By: _____/s/_____
                        Dennis M. Cusack

Attorneys for Plaintiff
COUPONS, INC.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' OPPOSITION TO DEFENDANT'S MOTION TO
SUMMARILY ENFORCE SETTLEMENT AGREEMENT –
USDC/NDC/SJ 5:07-CV-03457 HRL

- 25 -

-22675\1847383.3