Neil A. Goteiner (State Bar No. 083524)
Dennis M. Cusack (State Bar No. 124988)
Carly O. Alameda (State Bar No. 244424)
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
E-mail: ngoteiner@fbm.com, dcusack@fbm.com,
calameda@fbm.com

Attorneys for Plaintiff
COUPONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COUPONS, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHN STOTTLEMIRE,<br><br>    Defendant. | Case No. 5:07-CV-03457 HRL<br><br>**DECLARATION OF STEVEN BOAL IN OPPOSITION TO DEFENDANT'S MOTION TO SUMMARILY ENFORCE SETTLEMENT AGREEMENT**<br><br>Date: February 24, 2009<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Judge: Honorable Howard R. Lloyd |

I, Steven Boal, declare as follows:

1.    I am the founder and Chief Executive Officer of Coupons, Inc. I submit this declaration in opposition to Defendant's Motion to Summarily Enforce the Settlement Agreement. Coupons, based in Mountain View, California, provides marketing and technology solutions for delivering consumer-printed coupons on behalf of Coupons' clients. Coupons' core couponing, customer acquisition, and e-mail marketing services provide clients with creation, distribution, tracking, and reporting of consumer-printed coupons that can be redeemed in-store, alongside traditional paper clipped coupons.

2.    Coupons' clients include prominent consumer product manufacturers, advertising agencies, retailers, promotional marketing companies and Internet portals. The coupons are subject to copyright protection under federal law.

3. Advertisers usually want wide distribution of coupons across the target market. They always want to set and limit the total number available in order to control the total amount of discounts, and therefore the cost, of the marketing program.

4. Advertisers' goals require Coupons to ensure both wide distribution and control over the total number of coupons available in order to provide a valuable product to its customers. Coupons provides technological solutions to these challenges by, among other things: (1) controlling the number of total prints of a coupon per uniquely identified computer; and (2) uniquely identifying each coupon within a particular promotion to ensure each coupon's validity.

5. Whenever a computer seeks to have a coupon printed, Coupons' security system sends the computer's unique identifier to Coupons' server for verification. Coupons' system and technology determine if a computer is authorized to obtain a particular print, and if so, the system transmits the coupon directly to the consumer's printer. Thus, the consumer's computer must seek and obtain access each time it asks to have a coupon printed. If authorized, the computer prints the coupon, which the consumer can redeem at a local store.

6. Defendant Stottlemire created, used and distributed a method and software program designed to circumvent these security features with the express objective of having consumers print more than their authorized number of unique coupons from an individual computer. His scheme was effective at that time, in part because he is an expert in online coupons and software programming. Stottlemire understands the technology of coupons management in general, and many of Coupons' coupon generation procedures.

7. Stottlemire has developed some notoriety in the digital coupons industry. For instance, Stottlemire owned and operated the online forum called The Coupon Queen (www.thecouponqueen.net), in which consumers discuss and trade coupons (the "Coupon Queen Forum"). The Coupon Queen Forum advertised coupons for sale in exchange for a handling fee, all to Stottlemire's financial benefit.

8. Stottlemire used this lawsuit to promote his views and to encourage others to circumvent Coupons' security procedures to misappropriate coupons by printing unauthorized

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECL OF STEVEN BOAL /
USDC/NDC/SJ 5:07-CV-03457 HRL

- 2 -

22675\1855343.2

copies. He encouraged others to use those unauthorized coupons, which undermined our clients' advertising campaigns and misappropriated the value our clients provided in the coupons used in these campaigns.

9. His activities, including his public pronouncements and exhortation of others to attempt to circumvent our technology, injured Coupons and our clients. Every time Stottlemire or one of his followers attempted to circumvent Coupons' security measures to produce an unauthorized coupon, Stottlemire and his followers undermined the reputation of Coupons and the value of its services by creating doubts about Coupons' ability to protect the integrity and value of Coupons' clients' campaigns.

10. One piece of Stottlemire's pitch to his followers was that he was doing nothing wrong or illegal. He featured this argument on his website and in his pronouncements about the litigation. *See* exhibit A attached hereto, a part of his website. He also persuaded the Electronic Frontier Foundation to file an amicus brief in support of Stottlemire's motion to dismiss the Second Amended Complaint. The EFF reported this Court's Order on the motion to dismiss the Second Amended Complaint as a victory. *See* EFF website report attached hereto as Exhibit B.

11. The Court's denial of Stottlemire's motion to dismiss the DMCA and other claims in the Third Amended Complaint, was a new public fact that I understand led Stottlemire to agree to settle this case. Coupons was in part willing to settle the case because this Order appeared to support in principle Coupons' ability to state a cause of action based on the DMCA and other common law theories. This fuller picture of Coupons' claims against Stottlemire allowed the public to draw conclusions about whether the law protected Coupons' rights to prevent circumvention schemes such as Stottlemire's and thereby to protect Coupons' technology, its copyrights and its brand. We were also willing to settle this case because Coupons had developed and implemented new software that prevented Stottlemire and similar hackers from circumventing Coupons' security measures.

12. That was the record when the parties agreed to settle the case at the ENE. The settlement agreement, and particularly the confidentiality term, speaks for itself. The parties were to keep everything confidential so that neither party could tout a "victory," and the public could

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECL OF STEVEN BOAL /
USDC/NDC/SJ 5:07-CV-03457 HRL

- 3 -

22675\1855343.2

1 not infer that any side won the controversy. This confidentiality term was the core of the
2 settlement for Coupons. There was no other serious consideration that Coupons was receiving
3 from the settlement given Stottlemire's inability to fund a settlement. We were obviously not
4 concerned about his malicious prosecution threat. That threat was frivolous given this Court's
5 denial of Stottlemire's motion to dismiss Coupons' Third Amended Complaint and Stottlemire's
6 admissions to the fundamental facts of his violations.

13. I understand that Coupons could have pushed for another type of settlement that did not dismiss our claims against Stottlemire with prejudice, or even dismiss the case at all. Coupons proposed such a settlement to Stottlemire shortly after the case was filed, which would have enjoined Stottlemire from attempting to circumvent Coupons' security measures.

14. Coupons instead chose to enter into a settlement agreement with the term that required the parties to keep all settlement terms confidential. We would not have settled without the confidentiality term, which was critical to the settlement because of the predictable prejudice to Coupons had Stottlemire used the settlement terms to confuse the market with false claims of victory and of his right to develop workarounds to circumvent Coupons' new security software. And that prejudice occurred when he breached the confidentiality term, as discussed below.

15. Stottlemire breached the confidentiality term with his website comments and his interviews, as demonstrated in Exhibits C, D, and E, attached hereto.

16.

**REDACTED**

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECL OF STEVEN BOAL /
USDC/NDC/SJ 5:07-CV-03457 HRL

- 4 -

22675\1855343.2

17.

18.

**REDACTED**

19.

20.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECL OF STEVEN BOAL /
USDC/NDC/SJ 5:07-CV-03457 HRL

- 5 -

22675\1855343.2

21.

22.

**REDACTED**

23.

24. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed this 3rd day of February, 2009, in Mountain View, California

_/s/ Steven Boal_
Steven Boal

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECL OF STEVEN BOAL /
USDC/NDC/SJ 5:07-CV-03457 HRL

- 6 -

22675\1855343.2